**The STATE of Texas, Appellant,**

v.

**Joel David SMITH, Appellee.**

**No. 12–00–00294–CR.**

Court of Appeals of Texas, Tyler.

Dec. 19, 2001.

Edward J. Marty, Smith County Crim. Dist. Atty., Tyler, for appellant.

Barry L. Goodwin, Goodwin & Goodwin, James W. Volberding, Baynham & Volberding, Tyler, for appellee.

Panel consisted of DAVIS, C.J., WORTHEN, J., and GRIFFITH, J.

SAM GRIFFITH, Justice.

The State of Texas ("State") appeals the trial court's September 18, 2000 dismissal of a misdemeanor information charging Joel David Smith ("Appellee") with driving while intoxicated. The State raises one issue on appeal. We affirm.

### BACKGROUND

Appellee was charged on June 27, 1995, with driving while intoxicated. The case was set for trial the first time on November 20, 1995. Over the next five years, the case was repeatedly set for trial. The docket sheet lists more than fifteen trial settings and trial docket calls. On September 8, 2000, Appellee filed a "Motion to Set Aside the Complaint & Information for Failure to Afford Constitutional Right to Speedy Trial" ("speedy trial motion"). The speedy trial motion was based on alleged violations of Appellee's rights under the Sixth[1] Amendment and the Four-

teenth[2] Amendment to the United States Constitution, article I, section 10[3] of the Texas Constitution, and articles 1.03, 1.04, and 1.05 of the Texas Code of Criminal Procedure. In his motion, Appellee contended that the delay of the trial for more than five years had prejudiced his defense because he lost contact with numerous "fact and sobriety witnesses" and the videotape was lost.

Appellee and his trial attorney, Barry Goodwin ("Goodwin"), were the only two witnesses who testified at the hearing on the speedy trial motion. Appellee testified about potential witnesses with whom he worked immediately prior to his arrest for driving while intoxicated. He stated that he had lost contact with those witnesses in the five intervening years since his arrest and after the business at which they worked had closed. He stated that he and Goodwin had gone to the district attorney's office to view the videotape of him which the arresting officer made during the processing and questioning at the Smith County Jail immediately after his arrest. The videotape showed Appellee offering to provide a blood sample in response to the police officer's request for

1. The Sixth Amendment of the United States Constitution states:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

2. Section 1 of the Fourteenth Amendment to the United States Constitution states, in part:

No State shall make or enforce any law which shall abridge the privileges or immuni-

ties of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

3. Article I, section 10 of the Texas Constitution states:

In all criminal prosecutions, the accused shall have a speedy public trial, by an impartial jury; he shall not be compelled to give evidence against himself; he shall have the right of being heard by himself or counsel, or both; shall be confronted with the witnesses against him, and shall have compulsory process for obtaining witnesses in his favor: and no person shall be holden to answer for any criminal charge, but on indictment or information. . . .

Appellee to give a breath[4] sample[5] for testing to establish whether Appellee's blood alcohol concentration met or exceeded the parameters for statutory[6] intoxication. On cross-examination, Appellee explained that he had lost track of, and was now unable to contact, the witnesses he would have called regarding his lack of intoxication the night of his arrest.

Goodwin testified that the case was set for trial seventeen times and that he announced "ready" at numerous docket calls over a five-year period. Further, he also stated that he and Appellee viewed the videotape, and he reiterated its contents. Appellee and Goodwin also testified that Appellee would have financial difficulty hiring another attorney to represent him if his attorney was required to withdraw in order to testify at trial about the contents of the videotape. The State admitted to the court that they lost the videotape.

In closing argument on his motion, Appellee argued that, pursuant to *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the loss of the videotape severely prejudiced his defense. He argued that it prejudiced his defense not only because the videotape was unavailable, but also because of the resulting necessity that either Appellee or Goodwin would have to testify at trial in order to attempt to put before the jury the bare facts demonstrated in the videotape, especially his request for a blood test. Further, Appellee asserted that because either he or his attorney would have to testify, he would be forced to choose between two constitutional rights: either to give up his Fifth[7] Amendment right not to be required to testify against himself, or to give up his Sixth Amendment right to be represented by his attorney whom he had retained and paid, but who would then have to withdraw as his attorney and testify on Appellee's behalf as a fact witness. Appellee contended that his case was further prejudiced because he was financially unable to retain another attorney in the event his attorney had to withdraw.

The trial court weighed the *Barker* factors. The court noted the prejudice to Appellee due to the loss of the video. The court concluded that "[t]he thing that concerns me the greatest is prejudice to the defendant because of the time period in-

---

4. Although the statute provides testing of either blood or breath sample to determine intoxication, the accused is not entitled to the option of choosing which of the two designated samples to provide. "Only after the driver has given the specimen designated by the police officer may he request an alternative test be given by a person of his choosing." *Drapkin v. State*, 781 S.W.2d 710, 712 (Tex. App.—Texarkana 1989, pet. ref'd).

5. Article 6701l–5, section 1 of the Texas Civil Statutes (Vernon 1995) provides for "... the taking of one or more specimens of his breath or blood for the purpose of analysis to determine the alcohol concentration or the presence in his body of a controlled substance or drug if arrested for any offense arising out of acts alleged to have been committed while a person was driving or in actual physical control of a motor vehicle while intoxicated."

6. Texas Penal Code section 49.01(2)(B) (Vernon 1995), in effect the date of the arrest, defined "intoxicated" as meaning "having an alcohol concentration of 0.10 or more."

7. The Fifth Amendment to the United States Constitution states:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

volved here. There's the missing witness factors, which by themselves may not be sufficient. What gives the court greatest concern is the video. The video that could be exculpatory because of posture, body language, statements that were made, the request for another kind of test, so on and so forth.... I think that the loss of the video is most deadly in this; and therefore, I am going to grant the motion to dismiss."

The State now brings this appeal from the trial court's order of dismissal.

### SPEEDY TRIAL

■ In its sole issue, the State complains the trial court abused its discretion by dismissing Appellee's case. The United States Supreme Court, in *Klopfer v. North Carolina*, 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967), noted that "... the right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment." The right to a speedy trial is imposed on the states by the Due Process Clause of the Fourteenth Amendment. *Barker*, 407 U.S. at 515, 92 S.Ct. at 2184; *Chapman v. Evans*, 744 S.W.2d 133, 135 (Tex.Crim.App.1988); *Ostoja v. State*, 631 S.W.2d 165, 167 (Tex.Crim.App.1982). The Texas Constitution also guarantees a defendant the right to a speedy trial. *Fariss v. Tipps*, 463 S.W.2d 176, 179 (Tex. 1971); TEX. CONST. art. I, § 10. A defendant is further guaranteed the right to speedy trial by Article 1.05 of the Texas Code of Criminal Procedure. *Hull v. State*, 699 S.W.2d 220, 221 (Tex.Crim.App. 1985). And "[a]lthough the Texas and federal rights to a speedy trial are separate and distinct, interpretation and application of the Sixth Amendment right to a speedy trial by the federal courts serve as a useful guide to the interpretation of the Texas constitutional right to speedy trial." *Deeb v. State*, 815 S.W.2d 692, 704 (Tex.Crim. App.1991).

■ The Supreme Court, in *Barker*, explained that:

[t]he right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused. In addition to the general concern that all accused persons be treated according to decent and fair procedures, there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused.

*Barker*, 407 U.S. at 519, 92 S.Ct. at 2186. The supreme court has long recognized that "... any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context ..." [8] of the individual case, and as such, it "... is necessarily relative." *Beavers v. Haubert*, 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950 (1905). In addition, "[t]he essential ingredient is orderly expedition and not mere speed" in resolution of pending criminal accusations. *Smith v. United States*, 360 U.S. 1, 10, 79 S.Ct. 991, 997, 3 L.Ed.2d 1041 (1959).

■ In *Barker*, the Supreme Court enunciated a four-part balancing test by which a court was to evaluate claims of speedy trial violations on an *ad hoc* basis. The four factors are: (1) length of delay before the trial of the case,[9] (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. *Id.* at 407 U.S. at 530, 92 S.Ct. at 2192. The supreme court has thus de-

---

**8.** *Barker*, 407 U.S. at 522, 92 S.Ct. at 2188.

**9.** The delay is measured from the time the defendant is formally accused or arrested. *Dillingham v. United States*, 423 U.S. 64, 65,

96 S.Ct. 303, 304, 46 L.Ed.2d 205 (1975); *Chapman v. Evans*, 744 S.W.2d 133, 135 (Tex. Crim.App.1988).

scribed the interaction of these four factors:

> We regard none of these four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

*Barker*, 407 U.S. at 533, 92 S.Ct. at 2193.

### STANDARD OF REVIEW

 The appropriate standard of review for a speedy trial claim is a bifurcated standard of review which has been interpreted as applying an abuse of discretion standard to the factual issues, and applying a *de novo*[10] standard to the legal components of the trial court's decision. *State v. Munoz*, 991 S.W.2d 818, 821 (Tex.Crim. App.1999) (in reviewing trial court's decision on federal constitutional speedy trial claims, appellate courts may conduct *de novo* review by independently weighing and balancing the four *Barker* factors);

see also *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). Put differently, if "... trial court 'is not an appreciably better position' than the appellate court to decide the issue, the appellate court may independently determine the issue while affording deference to the trial court's findings on subsidiary factual questions." *Id., citing Villarreal v. State*, 935 S.W.2d 134, 139 (Tex.Crim.App.1996).

### LENGTH OF DELAY

 The courts have recognized the length of the delay from the time a person is arrested or charged to the time of trial as a "triggering mechanism." *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. As a result, inquiry into other factors is unnecessary until there has been a delay which is "presumptively prejudicial." *Id.* The inquiry regarding length of delay is described as a double inquiry. *Doggett v. United States*, 505 U.S. 647, 651, 112 S.Ct. 2686, 2690, 120 L.Ed.2d 520 (1992). Initially, the inquiry is whether the accused alleges the passage of sufficient time between the accusation and the trial to have "... crossed the threshold dividing ordinary from 'presumptively prejudicial'[11] delay." *Id.* at 651, 112 S.Ct. at 2690, *quoting Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. After the preliminary showing of a sufficiently long delay to qualify as presumptively prejudi-

---

10. The Texas Court of Criminal Appeals, in *Johnson v. State*, 954 S.W.2d 770, 771 (Tex. Crim.App.1997), writing about the standard of review of the four *Barker v. Wingo* factors, said "Review of these individual factors necessarily involves fact determinations and legal conclusions. The balancing test as a whole, however, is a purely legal question. Legal questions are review *de novo*." *Johnson*, 954 S.W.2d at 771.

11. The *Doggett* court noted that "[d]epending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it ap-

proaches 1 year. We note that, as the term is used in this threshold context, 'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* inquiry." *Doggett*, 505 U.S. at 652, 112 S.Ct. at 2691, n. 1. [citations omitted] The court of criminal appeals has stated that "... courts generally hold that any delay of eight months or longer is presumptively unreasonable and triggers speedy trial analysis." *Harris v. State*, 827 S.W.2d 949, 956 (Tex.Crim. App.1992).

cial, the burden shifts to the State to explain the delay. *Thompson v. State*, 983 S.W.2d 780, 784 (Tex.App.1998).

 In the present case, the delay from the date of the charging instrument until resolution of the case, according to Appellee's Motion to Set Aside Charging Instrument, was more than five years. Taken together with Appellee's trial attorney's uncontested testimony regarding his numerous announcements of "ready" for trial, the five-year [12] delay is sufficient to qualify as presumptively prejudicial. As a result, the burden shifts to the State to explain the reason for the delay.

### Reason for Delay

Closely related to the length of delay is the reason the government gives to justify the delay. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. The *Barker* court noted that "... the ultimate responsibility for such circumstances [of delay] must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192. The State has the burden to justify the delay. *Thompson*, 983 S.W.2d at 784. The courts have noted that reasons for the delay have "different weights." *Id.*

 Pertinent to the present case, a delay due to official negligence or an overcrowded court docket is a neutral reason. It is weighed against the State, however, "... since the ultimate responsibility for such circumstances must rest with the State rather than with the defendant." *Id.*, citing *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192, and *Emery v. State*, 881 S.W.2d 702, 708 (Tex.Crim.App.1994). The *Thompson* court also noted that:

[i]n undertaking the task of assigning weights to the reasons for delay, we must keep in mind the excessiveness of the delay, because the presumption that pretrial delay has prejudiced the accused intensifies over time. Thus, the weight we assign to official negligence compounds with the passage of time as the presumption of prejudice grows, and our tolerance of such negligence varies inversely with its presumption of prejudice grows, and our tolerance of such negligence varies inversely with its protractedness. By the same token, failure of the accused to assert his right to a speedy trial or his acquiescence to the delay may diminish the significance of the State's failure to adequately explain the delay. [citations omitted]

*Thompson*, 983 S.W.2d at 784. Further, "... the speedy trial right is too important to sanction neglect, even if non-wilful." *Phillips v. State*, 650 S.W.2d 396, 400 (Tex. Crim.App.1983). As the responsibility for delay rests with the State, "... the burden of excusing the delay rests with the State and ... in light of a silent record or one containing reasons insufficient to excuse the delay, it must be presumed that no valid reason for delay existed." *Turner v. State*, 545 S.W.2d 133, 137–38 (Tex.Crim. App.1976).

In the present case, the State was unable to explain the delay in affording Appellee a trial. As Goodwin noted, four or five State assistant district attorneys had been assigned to the trial court during the five years the case was pending. Goodwin also noted the press of cases, and that although he had announced "ready" for trial numerous times, the trial court was unable to reach Appellee's case due to other cases proceeding to trial. Thus, although the failure of the State to try Appellee for more than five years was not

---

12. Further, the court in *Barker* wrote that the "length of delay between arrest and trial— well over five years—was extraordinary." *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193–94.

intentional, such delay by the State accrues to constitute neglect. Further, the weight attributed against the State in this assessment of *Barker* factors became progressively heavier with the passage of time.

### ACCUSED'S ASSERTION OF RIGHT TO SPEEDY TRIAL

■ The accused has a responsibility to assert his right to a speedy trial. However, recognizing that the "... speedy trial right is so slippery," the supreme court noted that:

[t]he nature of the speedy trial right does make it impossible to pinpoint a precise time in the process when the right must be asserted or waived, but the fact does not argue for placing the burden of protecting the right solely on defendants. A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process. [footnote omitted]

*Barker*, 407 U.S. at 527, 92 S.Ct. at 2190. Although a defendant must, in some manner, assert the right to a speedy trial, the supreme court has rejected the proposition that a defendant must demand a speedy trial or waive that right. *Barker*, 407 U.S. at 528, 92 S.Ct. at 2191. However, failure to assert the right, although not waiving his constitutional right to a speedy trial, is a factor to be weighed against the defendant in balancing the *Barker* factors. *Munoz*, 991 S.W.2d at 825.

■ In the present case, Appellee never specifically requested a speedy trial. Rather, he contends that his announcement of "ready" for trial constituted an assertion of that right. The first documented, unequivocal claim of his right to a speedy trial came on September 8, 2000, when Appellee filed a motion entitled "Motion to Set Aside the Complaint & Information for Failure to Afford Constitutional Right to Speedy Trial."[13] The court promptly afforded Appellee a hearing on the motion ten days later, on September 18, 2000. Such promptness could suggest that had Appellee urged a request for a speedy trial earlier, the trial court would have afforded him a trial ahead of others on the docket. However, by September 8, 2000, after discovering the videotape was missing, Goodwin could have reasonably concluded that without the video, the defense was fatally handicapped. No longer was a speedy trial in his client's best interest. Rather, trial counsel could have justifiably determined that since the visual depletion of Appellee at the critical moment was missing, a dismissal was now the appropriate remedy to seek.

### PREJUDICE TO THE DEFENDANT

The final, and most critical[14] factor to a *Barker* speedy trial analysis, is whether a

---

**13.** The court of criminal appeals has held that although a motion to dismiss notifies the State and the court of the speedy trial claim, a defendant's motivation in asking for dismissal rather than a prompt trial is clearly relevant, and may sometimes attenuate the strength of his claim. *McCarty v. State*, 498 S.W.2d 212, 216 (Tex.Crim.App.1973). Further, the court of criminal appeals has made the following observation:

"This is not to say, however, that asking only for dismissal will result in a 'waiver,' while seeking a speedy trial and, in the alternative, a dismissal, would preserve the claim.

In some cases, defense counsel may legitimately feel that a long delay has caused a client so much prejudice that dismissal is warranted, even if the State is belatedly ready to move promptly. Each case must turn on its own facts, and the particular relief a defendant seeks is but one fact to consider." *Phillips v. State*, 650 S.W.2d 396, 401 (Tex.Crim. App.1983).

**14.** "... impairment of an accused's defense—has been one of the more weighty factors." *Hull*, 699 S.W.2d at 222.

defendant's defense was prejudiced by the delay in bringing his case to trial. The *Barker* court noted that, of the three interests [15] of the defendants to be protected by the right to speedy trial, the primary concern is to "limit the possibility that the defense will be impaired." *Id.* 407 U.S. at 532, 92 S.Ct. at 2193. The *Barker* court explained that:

> [o]f these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

*Barker,* 407 U.S. at 532, 92 S.Ct. at 2193.

The *Doggett* court noted that:

> [i]mpairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony "can rarely be shown." And though time can tilt the case against either side, one cannot generally be sure which of them it has prejudiced more severely. Thus, we generally have to recognize that excessive delay presumptively compromised the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay. [citations omitted]

*Doggett,* 505 U.S. at 655–56, 112 S.Ct. at 2692–93.

The court of criminal appeals, in *Courtney v. State,* 472 S.W.2d 151, 154 (Tex. Crim.App.1971), addressed the issue of prejudice as a factor in evaluating a violation of a defendant's right to speedy trial and adopted the following rule which:

> [r]equires a *prima facie* showing of prejudice to the accused, but the accused does not necessarily have to show actual prejudice. Once a presumption or *prima facie* case of prejudice arises, the State "must carry the obligation of proving that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay." The rationale here lies in the difficulty of proving prejudice and the likelihood of fundamental unfairness in overlong prosecutions. [citations and footnotes omitted]

*Courtney,* 472 S.W.2d at 154; *see also Phillips,* 650 S.W.2d at 401.

In the present case, the videotape was lost while in the State's possession. As the trial court noted in granting the dismissal, the videotape was a crucial piece of evidence in that it could clearly demonstrate the effect, if any, of Appellee's consumption of alcohol, the central issue of the State's criminal charge against Appellee. From the videotape, one could, perhaps, determine Appellee's demeanor, speech, and equilibrium, the touchstones of a determination of whether one had lost "... the normal use of mental or physical faculties by reason of the introduction of alcohol ... into the body." TEX. PEN.CODE ANN. § 49.01(2)(A) (Vernon 1996).

---

**15.** The *Barker* court noted three purposes of the right to a speedy trial: "... (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193.

## CONCLUSION

The numerous provisions of the United States Constitution and the Texas Constitution related to criminal trials were drafted by statesmen who understood the necessity of providing safeguards to protect the individual's rights when confronted by the power of the State's prosecution. Taken together, those provisions provide an accused a fair trial, pursuant to due process. The essence of a fair trial is for each side to be permitted to present all the evidence available to fully develop their theory of the case. Where, through no fault of a defendant, years pass without the opportunity for witnesses to testify under oath and cross-examination, their memories and perceptions preserved in written transcripts, both the State's and the defense's cases are diminished as memories dim. Further, where crucial evidence for the defense is lost while in the possession of the State, a defendant's opportunity for a fair trial is clearly diminished. The often cited quote by Judge Wyzanski regarding a lawyer's legal skills in criminal trials is as relevant to a defendant being put to trial without essential evidence. Judge Wyzanski wrote, "While a criminal trial is not a game in which the participants are expected to enter the ring with a near match in skills, neither is it a sacrifice of unarmed prisoners to gladiators." *United States ex. rel. Williams v. Twomey*, 510 F.2d 634, 640 (7th Cir.1975).

We cannot conclude, based on the record before us, that the trial court abused its discretion in finding the facts upon which it made its decision. The trial court heard the testimony of the witnesses and, therefore, was in the best position to assess their credibility. Most of the facts adduced by the two witnesses, however, were uncontested.

Applying the facts found by the trial court to the four *Barker* factors, we agree with the trial court's findings. The delay of more than five years in bringing the Appellee to trial was a presumptively prejudicial delay. The State offered no explanation of the delay except overcrowded dockets. Although Appellee did not urge his right to a speedy trial, he appeared at approximately fifteen trial dockets over the five-year period and announced ready. Finally, the videotape was a critical piece of evidence, and its loss was highly prejudicial to Appellee's defense. Taken together, Appellee established that the delay had prejudiced his ability to adequately defend himself from the charge against him. Although the five-year delay in itself was not dispositive, the loss of the videotape denied Appellee a critical, indeed, based on the facts in this case, essential piece of evidence. We also conclude that the loss of the videotape prejudiced Appellee's defense by requiring Appellee to choose between two constitutional rights. The United States Supreme Court has stated, "We find it intolerable that one constitutional right should have to be surrendered in order to assert another." *Simmons v. United States*, 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968). Therefore, Appellee established his right to dismissal due to the violation of his right to a speedy trial.

Having found no reversible error, we **affirm** the trial court's dismissal of the State's information.