COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-394-CR

 

 

DANIEL PIKE ORAND, JR. A/K/A                                            APPELLANT

DANNY TYRAIL BONDURANT                                                                

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM
THE 158TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------      

I.  Introduction








The sole issue that we
address in this appeal is whether the trial court erred by ruling that the
almost twelve-year delay between the indictment and the arrest of Appellant
Daniel Pike Orand, Jr. a/k/a Danny Tyrail Bondurant did not violate Bondurant=s federal constitutional right to a speedy trial.  For the reasons set forth below, we hold that
the trial court erred by concluding that Bondurant was not prejudiced by the
delay and that, consequently, the delay did not violate Bondurant=s speedy trial rights. 
Accordingly, we reverse the trial court=s judgment and render a judgment of acquittal.

II.  Factual and Procedural Background








The grand jury returned an
indictment on June 9, 1994, charging Bondurant[1]
with indecency with a child.  The offense
report indicates that the incident occurred in June 1992 in the City of Lake
Dallas in Denton County.[2]  Bondurant was eighteen or nineteen years old
at the time of the offense and is the uncle of the victim.  Although a warrant issued in 1994 for
Bondurant=s arrest, he
did not learn of the indictment or warrant for almost twelve years.  In February 2006, Bondurant learned of the
warrant and immediately turned himself in to authorities.  In August 2006, over fourteen years after the
date of the offense, BondurantCwho was by this time thirty-two years oldCwas tried and convicted. 
Bondurant had filed a probation application, swearing that he had never
before been convicted of a felony in the State of Texas or in any other state;
however, the jury assessed his punishment at six-and-a-half years= confinement, and the trial court sentenced him accordingly.  After his trial, Bondurant obtained appellate
counsel who timely filed a motion in arrest of judgment and motion to dismiss
the indictment, raising a violation of Bondurant=s federal constitutional speedy trial rights. 

The trial court conducted a
hearing on Bondurant=s
motion.  Lake Dallas Police Officer
Ronald Newby, who was a criminal investigator assigned to Bondurant=s case in 1993, testified at the hearing that the offense report in
the present case indicates the victim=s mother advised police on November 9, 1993, Athat [Bondurant] was living with his mother in Springer, Oklahoma at
an unknown house number on Main Street.@  Officer Newby confirmed that,
prior to Bondurant=s
indictment, he had successfully telephoned Bondurant=s mother=s residence
in Springer, Oklahoma, and had tried to make arrangements for Bondurant to Acome down and give a statement.@  Officer Newby agreed that he
knew Bondurant lived at home and that he had the telephone number to Bondurant=s mother=s residence.


Concerning the level of
difficulty one would encounter in attempting to locate Bondurant, Officer Newby
testified as follows:  

[Defense
Appellate Counsel]: Can you explain to me how it would be possible for someone
not to be able to find the defendant if heCif you already knew that he
lived with his mother and you had the phone number?  Would it be that difficult to go up there or
to know where he lived on Main Street in Springer, Oklahoma?@ 

 








[Officer
Newby]: Okay, based on enough information here, the defendant could have been
tracked down.

 

[Defense
Appellate Counsel]: How quickly if somebody was diligently trying to find him?

 

[Officer
Newby]: Probably not very long at all. 

 

Bondurant testified at the
hearing that he was thirty-two years old and that since 1984 he has lived
continuously with his mother in her home located at the corner of Main and
Northwest streets in Springer, Oklahoma. 
He testified that he has a social security card and number in the name
of Daniel Pike O=Rand.  A copy of the card was offered into
evidence.  Bondurant testified that he
has had the same social security number his entire life.  He has maintained an Oklahoma driver=s license, and when he received his license, his driver=s license number matched his social security number.  Bondurant was employed by VE Enterprise from
1994 to 1996; he was employed by Dollar General from 1996 to 2001; and the W-2
forms he received from his employers contained his social security number.  While working at Dollar General, Bondurant
fell down a flight of stairs at a Dollar General warehouse and became disabled;
he currently receives social security disability benefits.  








When Bondurant was old
enough, he hired a lawyer and, in 1994, legally changed his name.  Bondurant testified that he changed his name
because his brothers and sisters told him that Daniel Pike O=Rand I was not really his father. He said that he had been thinking
about changing his name for a long time, several years, but he had to wait until
he was an adult.  Bondurant explained
that he kept his first name and changed his last name to his mother=s maiden name, Bondurant. 
Bondurant testified, and indeed the court order granting him a name
change states, that he did Anot seek to have his name changed for any illegal or fraudulent
purpose or to delay or hinder creditors.@  Bondurant said that he did not
know of the charge against him when he changed his name.  Bondurant agreed that most people, if not
everyone, that he knew in Springer, Oklahoma, including people in the sheriff=s department who were friends of the family, knew that he had changed
his name. 

Finally, Bondurant=s trial attorney testified at the hearing as follows, in part:

[Defense
Appellate Counsel]:  Did you ever
consider - - in light of the lag of time between the date the indictment had been
issued or returned by the grand jury and the time that the defendant was
apprehended in February 2006, did it ever occur to you to file a motion to
dismiss for denial of a speedy trial?

 

[Defense
Trial Counsel]:  No.

 

[Defense
Appellate Counsel]:  Under the Federal
Constitution or otherwise?

 

[Defense
Trial Counsel]:  No.

 








[Defense
Appellate Counsel]:  Was your failure to
do that or to consider that in any way part of any kind of guided or misguided
trial strategy where the defendant would somehow gain any tactical advantage by
going ahead and being tried if you didn=t?

 

[Defense
Trial Counsel]:  No.  The issue never came up.

 

. . . .

 

[Defense
Appellate Counsel]:  What I am saying is
did you ever tell the defendant or explain to him or inform him adequately or
otherwise that he might have a speedy trial claim under the Sixth Amendment of
the Federal Constitution?

 

[Defense
Trial Counsel]:  The subject was never
discussed in any fashion at all.  No.

 

[Defense
Appellate Counsel]:  Not at all?

 

[Defense
Trial Counsel]:  No.  

 

At the conclusion of the hearing and after
considering supplemental briefs filed by Bondurant and the State, the trial
court signed an order denying Bondurant=s speedy trial claim.  The order
states that the trial court made the following findings:

(a)
The law enforcement agencies involved in the case on behalf of the State of
Texas failed to exercise due diligence in the apprehension of the Defendant
post-indictment.

 

(b)
Despite the period of delay between the charging of the Defendant by indictment
and his ultimate apprehension, there was no harm to the Defendant.

 

Bondurant timely perfected this appeal.

                                                    








 

III.  Right to Speedy Trial

The Sixth Amendment to the
United States Constitution guarantees the accused=s right to a speedy trial.  Zamorano
v. State, 84 S.W.3d 643, 647 (Tex. Crim. App. 2002).  The United States Supreme Court has stated, AOn its face, the Speedy Trial Clause is written with such breadth
that, taken literally, it would forbid the government to delay the trial of an >accused= for any
reason at all.@  Id. (quoting Doggett v. U.S.,
505 U.S. 647, 651, 112 S. Ct. 2686, 2690 (1992)).  Thus, in Barker v. Wingo, the United
States Supreme Court qualified the literal sweep of the provision by analyzing
the constitutional question in terms of four specific factors:

1)     whether the delay before trial was
uncommonly long;

 

2)     whether
the government or the criminal defendant is more to blame for the delay;

 

3)     whether
in due course, the defendant asserted his right to a speedy trial; and

 

4)     whether
the defendant suffered prejudice as the delay=s
result. 

 








407 U.S. 514, 530, 92 S. Ct. 2182, 2192
(1972).  Under Barker, courts must
analyze federal constitutional speedy trial claims by first weighing the
strength of each of the above factors and then balancing their relative weights
in light of the conduct of both the prosecution and the defendant.  Zamorano, 84 S.W.3d at 648.  None of the four factors is either a
necessary or sufficient condition to the finding of a deprivation of the right
to a speedy trial; instead, all must be considered together along with any
other relevant circumstances.  Id.  No one factor possesses Atalismanic qualities@; thus, courts must Aengage in a difficult and sensitive balancing process in each
individual case.@  Id. (quoting Barker, 407 U.S.
at 533, 92 S. Ct. at 2182).

IV.  Standard of Review

In reviewing the trial court=s ruling on Bondurant=s federal constitutional speedy trial claims, we apply a bifurcated
standard of review: an abuse of discretion standard for the factual components
and a de novo standard for the legal components.  Id.

V.  Analysis of the Barker Factors

A.     Length of Delay








The length of delay between
the initial charge and the trial acts as a triggering mechanism, and unless the
length of this delay is presumptively prejudicial, courts need not inquire into
or examine the other three speedy trial factors.  Id. 
Depending on the nature of the charges, a postaccusation delay of about
one year is Apresumptively
prejudicial.@  Doggett, 505 U.S. at 652 n.1, 112 S.
Ct. at 2691.  If the accused shows that
the interval between accusation and trial has crossed the threshold dividing Aordinary@ from Apresumptively prejudicial@ delay, under the length-of-delay factor the court must then consider
the extent to which that delay stretches beyond the bare minimum needed to
trigger judicial examination of the claim. 
Zamorano, 84 S.W.3d at 649 (quoting Doggett, 505 U.S. at
652, 112 S. Ct. at 2690-91).  This second
inquiry is significant to the speedy trial analysis because the Apresumption that pretrial delay has prejudiced the accused intensifies
over time.@  Id. 









The State here concedes that
the eleven-year, eight-month delay between the indictment and the apprehension
of Bondurant Awas amply
sufficient to trigger a speedy-trial inquiry.@  The State also concedes that Asince the delay stretched far beyond the minimum needed to trigger the
inquiry,@ Athis factor
weighs heavily in favor of Appellant.@  We agree.  We have located no case in Texas or United
States Supreme Court jurisprudence dealing with a delay as long or longer than
the eleven-year, eight-month delay presented here.  See, e.g., Doggett, 505 U.S. at
657-58, 112 S. Ct. at 2693-94 (granting relief based on an
eight-and-a-half-year delay between Doggett=s indictment and arrest); Zamorano, 84 S.W.3d at 649 (reversing
trial and appellate courts= failure to grant relief based on a two-year, ten-month delay between
appellant=s arrest and
the hearing on his speedy trial motion); State v. Perkins, 911 S.W.2d
548, 551 (Tex. App.CFort Worth
1995, no pet.) (affirming relief granted based on two-year, nine-month delay
between indictment and the speedy trial hearing); see also State v.
Smith, 66 S.W.3d 483, 489-90 (Tex. App.CTyler 2001, no pet.) (affirming relief granted based on five-year
delay between date of charging instrument and resolution of the case); State
v. Rangel, 980 S.W.2d 840, 843-45 (Tex. App.CSan Antonio 1998, no pet.) (affirming relief granted based on
twenty-month delay between defendant=s arrest and the speedy trial hearing).

The eleven-year, eight-month
delay here is not only presumptively prejudicial, it stretches far, far beyond
(approximately twelve times beyond) the approximately twelve-month minimum delay
necessary to trigger judicial examination of a speedy trial claim.  Consequently, the length of the delay here
weighs extremely heavily against the State and in favor of Bondurant.

B.     Reasons for the Delay








Here, the trial court made a
fact finding concerning the second Barker factor.  The trial court found that the State failed
to exercise due diligence[3]
in Bondurant=s
apprehension.  We review the trial court=s factual determination of negligence by the government with
considerable deference.  See Doggett,
505 U.S. at 652, 112 S. Ct. at 2691 (explaining that as for the second Barker
criterion, Awe review
the trial court=s
determinations of [governmental] negligence with considerable deference@); Zamorano, 84 S.W.3d at 648-49 (explaining that we apply an
abuse of discretion standard to the trial court=s resolution of factual issues in a speedy trial challenge).








The record before us amply
supports the trial court=s
finding.  The evidence in the record
before us shows that the State did nothing to attempt to apprehend Bondurant
after an indictment was returned and a warrant issued for his arrest.[4]  The State knew where Bondurant was living,
had his phone number, and had confirmed, prior to Bondurant=s indictment, his location at this residence and his telephone
number.  Officer Newby conceded that
Bondurant could have been located in a very short period of time; he said,
however, that once a warrant was issued, the Denton County Sheriff=s office was supposed to serve the warrant.  Thus, the State offered virtually no
explanation for its failure for eleven years and eight months to make any
attempt to apprehend Bondurant.  The
trial court=s finding of
negligence stands.  See Doggett, 505
U.S. at 653, 112 S. Ct. at 2691 (noting on facts less compelling than the facts
presented here that the trial court=s finding of negligence by the government stood).

In determining the weight to
be assigned this factor in this case, we note that different weights are given
to different reasons for delay espoused by the government.  Barker, 407 U.S. at 531, 92 S. Ct. at
2192.  A deliberate attempt to delay the
trial in order to hamper the defense should be weighted heavily against the
government.  Id., 92 S. Ct. at
2192.  A more neutral reason such as
negligence or overcrowded courts should be weighted less heavily but
nevertheless should be considered because the ultimate responsibility for such
circumstances must rest with the government rather than with the
defendant.  Id., 92 S. Ct. at
2192.  Finally, a valid reason, such as a
missing witness, should serve to justify delay.  Id., 92 S. Ct. at 2192.








Here, the State provided no
explanation at all for its failure to make even a single effort to apprehend
Bondurant.  In the absence of any
explanation, the delay weighs against the State.  And the weight we assign to governmental
negligence compounds over time as the presumption of evidentiary prejudice
grows.  Doggett, 505 U.S. at 657,
112 S. Ct. at 2693. Here, there was much compounding over the eleven-year,
eight-month delay.  This factor weighs
very, very heavily against the State and in favor of Bondurant. 

 

C.     Assertion of the Right

Bondurant did not assert his
speedy trial right until after a judgment was entered against him.  He raised it in a motion in arrest of
judgment and to dismiss the indictment as violative of his federal
constitutional speedy trial rights.  See
Tex. R. App. P. 22.








The nature of the speedy
trial right makes it impossible to pinpoint a precise time in the process when
the right must be asserted or waived, but that fact does not argue for placing
the burden of protecting the right solely on defendants.  Barker, 407 U.S. at 527, 92 S. Ct. at
2190.  The right to a speedy trial is
constitutionally guaranteed and, as such, is not to be honored only for the
vigilant and the knowledgeable.  Id.
at n.27, 92 S. Ct. at 2190 (quoting Hodges v. United States, 408 F.2d
543, 551 (8th Cir. 1969)).  Consequently,
the United States Supreme Court has expressly rejected the proposition that a
defendant who fails to demand a speedy trial has forever waived his right.  Id. at 528, 92 S. Ct. at 2191 (saying,
AWe reject, therefore, the rule that a defendant who fails to demand a
speedy trial forever waives his right.@).  This does not mean, however,
that a defendant has no responsibility to assert his right.  Id., 92 S. Ct. at 2191.  The better rule is that the defendant=s assertion of or failure to assert his right to a speedy trial is one
of the factors to be considered in an inquiry into the deprivation of the right.  Id.

Here, Bondurant testified
that he was unaware of the indictment against him or of the warrant out for his
arrest until he learned of them in February 2006 and immediately turned himself
in to authorities in Springer, Oklahoma. 
This testimony was unchallenged. 
The State offered no testimony or evidence that Bondurant had been
informed by anyone of the indictment or of the warrant prior to February
2006.  Thus, Bondurant is not to be taxed
for invoking his speedy trial right only after his arrest.  See Doggett, 505 U.S. at 653-54, 112
S. Ct. at 2691 (explaining that when the defendant did not know of the
indictment or warrant he could not be taxed for invoking his speedy trial right
only after his arrest).








The State nonetheless
contends that Bondurant failed to timely assert his speedy trial rights because
he did not raise them for six months, until after judgment was entered against
him.[5]  But the crux of Bondurant=s speedy trial complaint is not the six-month delay between his arrest
and his trial; it is the eleven-year, eight-month delay between when he was
indicted and when he learned of the charge and turned himself in to
authorities.  Bondurant raised this
speedy trial issue in a timely filed postjudgment motion, and the issue was
presented to the trial court for a ruling. 
See Tex. R. App. P.
22.  Thus, Bondurant asserted and
properly preserved any error in the trial court=s ruling on this speedy trial issue. 
See, e.g., Tex. R. App. P.
33.1(a).

Moreover, Bondurant=s trial counsel testified that he never informed Bondurant of the
possibility that a claim existed for the violation of Bondurant=s speedy trial rights.  Thus, the
record before us will not support an inference that Bondurant somehow
knowingly, retroactively, waived his speedy trial rights concerning the
eleven-year, eight-month delay.  See,
e.g., Barker, 407 U.S. at 528, 92 S. Ct. at 2191 (rejecting the demand-waiver
rule).  Although Bondurant could have
asserted his speedy trial rights possibly six months earlier, the failure to
assert them at the earliest opportunity does not trigger a waiver of the right
in the absence of evidence that a waiver was intended.  See Doggett, 505 U.S. at 654, 112 S.
Ct. at 2691.  








Nor does the record show that
Bondurant acquiesced to the eleven-year, eight-month delay between his
indictment and his arrest; Bondurant testified that he did not know of the
charge against him.  See Smith, 66
S.W.3d at 491 (affirming speedy trial relief granted by trial court even though
A[i]n the present case, Appellee never specifically requested a speedy
trial,@ only a dismissal of the charges); accord Shaw v. State, 117
S.W.3d 883, 890 (Tex. Crim. App. 2003) (presuming prejudice from length of
delay but holding that presumed prejudice was extenuated by defendant=s long-time acquiescence to the delay); Dragoo v. State, 96
S.W.3d 308, 315 (Tex. Crim. App. 2003) (holding that when the appellant knew of
charges against him and failed to assert a speedy trial right for
three-and-a-half years, was represented by counsel at all relevant times, and
no question was raised as to the competency of such counsel, the
assertion-of-the-right Barker factor weighed against him).  We hold that Bondurant timely asserted his
speedy trial issue via his motion in arrest of judgment and motion to dismiss
the indictment which he filed in the trial court.   See Tex.
R. App. P. 22. 

This factor weighs at least
slightly against the State and in favor of Bondurant.

D.     Prejudice Caused by the
Delay








The final factor of Aprejudice@ must be
assessed in light of the interests the speedy trial right was intended to
protect.  See Barker, 407 U.S. at
532, 92 S. Ct. at 2193.  Those interests
are (1) to prevent oppressive pretrial incarceration, (2) to minimize the
accused=s anxiety and concern, and (3) to limit the possibility the defense
will be impaired.  Id., 92 S. Ct.
at 2193.  Because Bondurant was not
confined and was unaware of the charges against him or of the warrant that had
issued for his arrest, the first two interests are not at issue here.  Consequently, we focus on the third interest,
the possibility that Bondurant=s defense was impaired.

Impairment of one=s defense is the most difficult form of speedy trial prejudice to
prove because time=s erosion of
exculpatory evidence and testimony can rarely be shown.  Id., 92 S. Ct. at 2193.  The possibility that the accused=s defense will be impaired by dimming memories and loss of exculpatory
evidence is the most serious interest that the right to speedy trial protects
because the inability of a defendant to adequately prepare his case skews the
fairness of the entire system.  Doggett,
505 U.S. at 654, 112 S. Ct at 2692. 
Affirmative evidence of particularized prejudice is not essential to
every speedy trial claim because excessive delay presumptively compromises the
reliability of a trial in ways that neither party can prove or even
identify.  Id. at 655, 112 S. Ct.
at 2693.  And the presumption of
prejudice grows and intensifies over time. 
Id. at 656, 112 S. Ct. at 2693. 
However, the presumption of prejudice to a defendant=s ability to defend himself can be Aextenuated . . . by the defendant=s acquiescence@ in the
delay.  Id. at 658, 112 S. Ct.
2694.








A brief review of the Doggett
case reveals that it is controlling here. 
In Doggett, eight-and-a-half years elapsed between Doggett=s indictment and his arrest.  Id.
at 648, 112 S. Ct. at 2689.  Doggett did
not know of the charges against him, left the country for two years, then
returned to the United States and passed unhindered through customs, settled in
Virgina, married, earned a college degree, found a steady job, lived openly
under his name, and stayed within the law.  Id. at 649, 112 S. Ct. at 2689.  Six years after Doggett returned to the
United States, he was arrested.  Id.
at 650, 112 S. Ct. at 2690.  After his
arrest, Doggett raised a speedy trial claim. 
Id., 112 S. Ct. at 2690. 
The trial court found that the government was negligent in its efforts
to apprehend Doggett during the six years after he returned to the United
States but denied his speedy trial claim because it found that Doggett had not
been prejudiced.  Id. at 650, 112
S. Ct. at 2690.  A split panel of the
court of appeals affirmed.  United
States v. Doggett, 906 F.2d 573, 582 (11th Cir. 1990).








The United States Supreme
Court reversed the judgment of the trial court and of the court of appeals and
found that Doggett=s speedy
trial rights had been violated by the six-year delay in his arrest after he
returned to the United States.  Doggett,
505 U.S. at 658, 112 S. Ct. at 2694. 
Concerning the prejudice prong of the Barker analysis, the Doggett
Court explained that Doggett was not required to show prejudice:

When the government=s negligence thus causes delay six times as long as that generally
sufficient to trigger judicial review, . . . and when the presumption of
prejudice, albeit unspecified, is neither extenuated, as by the defendant=s acquiescence, nor persuasively rebutted, the defendant is entitled
to relief.

Id., 112
S. Ct. at 2694.








The State here argued in the
trial court that Bondurant=s claim of prejudice was Alaughable@ because he
claimed that he was not at the house when the incident with his niece
occurred.  Thus, according to the State,
it was a typical he-said, she-said case, and the length of the delay did not
impact either side=s
strategy.  But the State overlooks the
fact that had Bondurant been brought to trial sooner, perhaps he would have had
some memory of exactly where he was on the day of the incident and could have
identified witnesses to support his claim that he was not present at the time
of the incident.  Bondurant cannot
remember where he was or whom he was with on the date of the incident, which
occurred fourteen years and two months before his trial.[6]  Thus, he cannot identify potential witnesses,
nor make any showing of specific prejudice; time=s erosion of such exculpatory evidence and testimony can rarely be
shown.  See Barker, 407 U.S. at
532, 92 S. Ct. at 2193.  Additionally,
due to the lapse of time, Bondurant was deprived of the ability to effectively
cross-examine the State=s witnesses;
any word uttered or any fact or detail provided by the State=s witness was simply unimpeachable. 
The passage of time rendered the credibility of the State=s witnesses concrete, exempt from the testing fire of a
cross-examination planned after detailed witness interviews and extensive
defense investigation.  Although
Bondurant points to no specific affirmative evidence of particularized
prejudice, the extreme and excessive length of the delay here presumptively
compromised the reliability of his trial in ways that neither party can prove
or even identify.  See Doggett,
505 U.S. at 655, 112 S. Ct. at 2693.  And
the presumption of prejudice intensified and grew with each passing year of
delay.  See id. at 656, 112
S. Ct. at 2693.  The State=s argument that the case boiled down to a he-said, she-said scenario
may be correct, but it does not persuasively rebut the mushrooming presumption
of prejudice because it is undeniable that the excessive delay between
Bondurant=s indictment
and his arrest forever precluded Bondurant from proving that what he said was
true and what she said was not.








Just as the trial court in Doggett
erroneously found that Doggett had not been prejudiced by the delay between his
indictment and arrest, the trial court here likewise erred.  The delay in Doggett was merely six
times as long as that generally sufficient to trigger judicial review.  Id. at 658, 112 S. Ct. at 2693.  The delay here was twice as long as the delay
in Doggett and was twelve times as long as that generally sufficient to
trigger judicial review.  See id.,
112 S. Ct. at 2693.  And like the
delay in Doggett, the delay here was neither extenuated (Bondurant did
not acquiesce to the delay) nor rebutted (the State offered no explanation for
the delay).  See Doggett, 505 U.S.
at 658, 112 S. Ct. at 2694.        Thus, in summary, the fourth Barker
prejudice factor weighs against the State and in favor of Bondurant.      

E.     Balancing








Having analyzed the four Barker
factors, we now balance them.  Accord
Zamorano, 84 S.W.3d at 654-55.  The
eleven-year, eight-month delay between Bondurant=s indictment and his apprehension weighs extremely heavily against the
State and in favor of Bondurant.  Added
to the weight of the first factor is the compounding weight given to the second
factor, the reason for the delay.  No
reason whatsoever for the delay was offered by the State.  Instead, Bondurant put on evidence that even
prior to his indictmentCso for the
duration of the entire eleven-year, eight-month delayCthe authorities possessed knowledge of his location and a phone number
where he could be reached.  Additionally,
the trial court specifically found that the State failed to exercise due
diligence by making no efforts to apprehend Bondurant for eleven years and
eight months.  The weight given to the
second factor, compounding each year during the eleven-year, eight-month delay,
renders the weight given to this factor extremely, almost insurmountably,
heavy.  The onerous weight given to the
second factor added together with the weight given to the first factor, tips
the scales so far in favor of Bondurant and against the State that it is
doubtful the weight of these two factors in Bondurant=s favor could be offset by the remaining two factors even if they
weighed in favor of the State, which they do not.








But, nonetheless, we add the
remaining two factors to the balance too. 
The third factor likewise weighs at least slightly against the
State.  As recognized by the United
States Supreme Court, the defendant has no obligation to bring himself to
trial; the burden rests upon the government, and here the State failed to
discharge its obligation for almost twelve years.  Bondurant did assert his speedy trial rights
in the trial court, and this assertion sufficiently preserved the issue.  Thus, adding the slight weight of this factor
to Bondurant=s side of
the scales, the immense weight of the now three factors stacked on Bondurant=s side is so heavy that, no matter what weight is given to the
remaining fourth prejudice factor weighing against the State, it cannot cause
the scales to tip any further in Bondurant=s favor.  

Nonetheless, we add the
fourth prejudice factor to the balancing analysis.  Although Bondurant did not show any specific
prejudice, we have held that here the length of the delay itself is sufficient
to establish strongly presumed prejudice. 
Because of the delay, fourteen years and two months elapsed between the
date of the offense and the date of Bondurant=s trial.  The eleven-year,
eight-month delay attributable to the negligence of the State presumptively
prejudiced Bondurant, and as discussed above, the presumption of prejudice grew
with each passing year.  The State has
not persuasively rebutted the by now very weighty presumption that Bondurant
was prejudiced by the delay.  Thus, the
fourth and final factor weighs against the State and in favor of
Bondurant.  Adding it to the other three
factors weighing against the State and in favor of Bondurant, the scales are
fully weighted in Bondurant=s favor.

Having weighed each of the Barker
factors and balanced their respective weights in light of the conduct of
both the State and Bondurant, we hold that Bondurant was denied his right to a
speedy trial under the Sixth Amendment to the United States Constitution.  We therefore sustain Bondurant=s sole issue.

VI.  Conclusion








Having sustained Bondurant=s sole issue, we reverse the trial court=s judgment and render a judgment of acquittal.

 

SUE WALKER

JUSTICE

 

PANEL B:   LIVINGSTON, WALKER, and MCCOY, JJ.

 

PUBLISH

 

DELIVERED:
April 10, 2008











[1]Bondurant
was formerly known as Daniel Pike O=Rand II.





[2]No
one reported the incident to police for approximately eleven months after it
occurred, which explains almost one year of the two-year delay between the
offense and the indictment. 





[3]We
perceive no distinction, and indeed the State does not argue that one exists,
between a Afailed
to exercise due diligence@
finding and a Anegligence@
finding.





[4]The
trial court stated on the record at the conclusion of the hearing:

 

I don=t recall any reason
whatsoever being given that they didn=t go and arrest the guy that
would make sense to any half-ass reasonable person.  They just didn=t try
to go get him.  He lived in Springer,
Oklahoma for ten years.  Springer,
Oklahoma ain=t got
dip people in it.  They called his mother
up there before he was indicted.  He
lived with his mother. 





[5]We
have not included the six-month time period between Bondurant=s
apprehension and his trial in the computation of the eleven-year, eight-month
delay.  An eleven-year, eight-month delay
existed between the indictment and Bondurant=s apprehension, and an
additional six-month delay existed between Bondurant=s
apprehension and his trial. 





[6]To
reiterate, the offense occured in June 1992; Bondurant was indicted in June
1994, learned of the charge in February 2006, turned himself in to authorities
in February 2006, and was tried in August 2006.