ACCEPTED
01-14-00897-cr
FIRST COURT OF APPEALS
HOUSTON, TEXAS
7/24/2015 4:40:12 PM
CHRISTOPHER PRINE
CLERK

## NO. 01-14-00897-CR

## IN THE COURT OF APPEALS
## FOR THE FIRST JUDICIAL DISTRICT OF TEXAS
## AT HOUSTON

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
7/24/2015 4:40:12 PM
CHRISTOPHER A. PRINE
Clerk

| | | |
|---|---|---|
| **ENRIQUE CHAVEZ AGUIRRE** | § | **APPELLANT** |
| | § | |
| **VS.** | § | |
| | § | |
| **THE STATE OF TEXAS** | § | **APPELLEE** |

## APPEAL FROM CAUSE NO. 0950986
## IN THE 178TH DISTRICT COURT
## OF HARRIS COUNTY, TEXAS

## APPELLANT'S BRIEF

**STANLEY G. SCHNEIDER**
**SCHNEIDER & MCKINNEY, P.C.**
**Texas Bar No. 17790500**
**440 Louisiana, Suite 800**
**Houston, Texas 77002**
**(713) 951-9994 (Office)**
**(713) 224-6008 (Fax)**
**stans3112@aol.com (Email)**

**ATTORNEY FOR APPELLANT**

**APPELLANT REQUESTS ORAL ARGUMENT**

## Identity of Parties and Counsel

The following is a complete list of all parties to the trial court's judgment, and the names and addresses of all trial and appellate counsel:

Enrique Chavez Aguirre . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Appellant


State of Texas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Appellee


Mike Monks . . . . . . . . . . . . . . . . . . . . . . . Appellant's Retained Counsel at Trial
4615 Southwest Freeway, Suite 520
Houston, Texas 77027

Patricia Ventura. . . . . . . . . . . . . . . . . . . . . . Appellant's Retained Counsel at Trial
4615 Southwest Freeway, Suite 520
Houston, Texas 77027

Charles Brodsky. . . . . . . . . . . . . . . . . . . . . . . Assistant District Attorney at Trial
1201 Franklin, Suite 600
Houston, Texas 77002

Erin Epley. . . . . . . . . . . . . . . . . . . . . . . . . . . Assistant District Attorney at Trial
1201 Franklin, Suite 600
Houston, Texas 77002

Stanley G. Schneider . . . . . . . . . . . . . . . Appellant's Retained Counsel on Appeal
440 Louisiana, Suite 800
Houston, Texas 77002

Alan Curry . . . . . . . . . . . . . . . . . . . . . . . . Assistant District Attorney on Appeal
1201 Franklin, Suite 600
Houston, Texas 77002

Hon. David L. Mendoza . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Trial Judge

# Table of Contents

Identity of Parties and Counsel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

List of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Issues Presented. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

> Issue One: The trial court abused its discretion in denying Appellant's Motion for New Trial.

> Issue Two:  Appellant was denied effective assistance of counsel based on trial counsel's failure to investigate the law and facts necessary to present a speedy trial claim based on the delay in his arrest from the time of the indictment in this cause on June 3, 2003,  to his arrest on October 26, 2013.

Hearing on the Motion for New Trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Argument and Authorities
in Support of Issues One and Two. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Ineffective Assistance of Counsel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Law Pertaining to Speedy Trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

     A.    Length of the delay. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
     B.    Reason for the delay. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
     C.    Assertion of the right. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
     D.    Prejudice. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
     E.    Balancing Test. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
     F.    Sixth Amendment Prejudice. . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

# List of Authorities

**Cases**                                                                      **Page**

*Banks v. State*,
819 S.W.2d 676, 682 (Tex. App.– San Antonio 1991, pet. ref'd). . . . . . . . 22

*Barker v. Wingo*,
407 U.S. 514 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Bosworth v. State*,
06-12-00058-CR, 2013 WL 563321
(Tex. App.—Texarkana Feb. 15, 2013, no. pet. h.). . . . . . . . . . . . . . . . . 28

*Branscum v. State*,
750 S.W.2d 892, 895 (Tex. App.—Amarillo 1988, no pet.). . . . . . . . . . . . 31

*Brown v. State*,
974 S.W.2d 289, 294 (Tex. App. San Antonio 1998, pet. ref'd). . . . . . . . . 46

*c.f. United States v. Escamilla*,
244 F. Supp. 2d 760, 769 (S.D. Tex. 2003). . . . . . . . . . . . . . . . . . . . . . . . 32

*Cantu v. State*,
253 S.W.3d 273, 281 (Tex. Crim. App. 2008). . . . . . . . . . . . . . . . . . . . . . 25

*Cowart v. Hargett*,
16 F.3d 642 (5th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Deluna v. State*,
05-10-01339-CR, 2012 WL 3642308
(Tex. App.—Dallas Aug. 27, 2012, pet. ref'd). . . . . . . . . . . . . . . . 34, 35, 43

*Doggett v. United States*,
505 U.S. 647, 651-52 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Dokter v. State*,
281 S.W.3d 152, 158 (Tex. App.—Texarkana 2009, no pet.). . . . . . . . . . . 35

*Doles v. State*,
876 S.W.2d 741, 746 (Tex. App.– Tyler, 1989). . . . . . . . . . . . . . . . . . . . . . 22

*Dragoo v. State,*
96 S.W.3d 308, 316 (Tex. Crim. App. 2003). . . . . . . . . . . . . . . . . . . . 26, 28

*Ex parte Ewing,*
570 S.W.2d 941, 947(Tex. Crim. App. 1978). . . . . . . . . . . . . . . . . . . . . . . 19

*Ex parte Kunkle*,
852 S.W.2d 499, 505 (Tex. Crim. App.),
*cert. denied*, *Kunkle v. State*, 114 S.Ct. 122, 126 L.Ed.2d 87 (1993). . . . . 20

*Ex parte Lilly,*
656 S.W.2d 490 (Tex. Crim. App. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Ex parte Raborn*,
658 S.W.2d 602, 605 (Tex. Crim. App. 1983). . . . . . . . . . . . . . . . . . . . . . . 19

*Ex parte Welborn*,
785 S.W.2d 391, 396 (Tex. Crim. App. 1990). . . . . . . . . . . . . . . . . 19, 22-23

*Ex parte Ybarra*,
629 S.W.2d 943, 949 n.15 (Tex. Crim. App. 1982). . . . . . . . . . . . . . . . . . . 22

*Gonzales v. State*,
PD-0724-12, 2013 WL 765575
(Tex. Crim. App. Feb. 27, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 37

*Goodrum v. Quarterman*,
547 F.3d 249, 260 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Greene v. State*,
928 S.W.2d at 126. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Guajardo v. State*,
  999 S.W.2d 566, 570
  (Tex. App.—Hous. [14th Dist.] 1999, pet. ref'd). . . . . . . . . . . . . . . . . . . . 28

*Harris v. State,*
  827 S.W.2d 949, 957 (Tex. Crim. App. 1992). . . . . . . . . . . . . . . . . . . . . . 34

*Hodges v. United States*,
  408 F.2d 543, 551 (8th Cir. 1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Jackson v. State*,
  857 S.W.2d 678, 683 (Tex. App.– Houston [14th Dist.], 1993). . . . . . . . . 20

*Kimmleman v. Morrison*,
  477 U.S. 365, 380 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Klopfer v. North Carolina*,
  386 U.S. 213, 223-26 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Kyles v. Whitley*,
  514 U.S. 419, 430 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Lewis v. Dretke*,
  355 F.3d 364, 368 (5th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*McMann v. Richardson*,
  397 U.S. 759 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Moore v. Johnson*,
  194 F.3d 586, 604 (5th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Orand v. State*,
  254 S.W.3d 560 (Tex. App.—Fort Worth 2008). . . . . . . . . . . . . . . . passim

*Pete v. State*,
  501 S.W.2d 683, 687 (Tex. Crim. App. 1973). . . . . . . . . . . . . . . . . . . . . 25

*Phillips v. State,*
 650 S.W.2d 396, 399 (Tex. Crim. App. 1983). . . . . . . . . . . . . . . . . . . . 25, 29

*Puckett v. State,*
 279 S.W.3d 434, 437 (Tex. App.—Texarkana 2009, no pet.). . . . . . . . . . 38

*Ramirez v. State,*
 65 S.W.3d 156, 158 (Tex. App.– Amarillo, 2001). . . . . . . . . . . . . . . . . . 45

*Rivera v. State,*
 990 S.W.2d 882, 891 (Tex. App.—Austin 1999, pet. ref'd). . . . . . . . . . . 35

*Rodriguez v. Young,*
 906 F.2d 1153, 1161 (7th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Sanders v. State,*
 715 S.W.2d 771, 775 (Tex. App.– Tyler, 1986). . . . . . . . . . . . . . . . . . . . 21

*Shaw v. State,*
 117 S.W.3d 883, 890 (Tex. Crim. App. 2003). . . . . . . . . . . . . . . . . . . . 26

*State v. Flores,*
 951 S.W.2d 134, 141 (Tex. App.—Corpus Christi 1997, no pet.). . . . . 31, 34

*State v. Jones,*
 168 S.W.3d 339, 345 (Tex. App.—Dallas 2005, pet. ref'd). . . . . . . . . . . 28

*State v. Manley,*
 220 S.W.3d 116, 128 (Tex. App.—Waco 2007, no pet.). . . . . . . . . . . . . 34

*State v. Munoz,*
 991 S.W.2d 818, 826 (Tex. Crim. App. 1999). . . . . . . . . . . . . . . . . . . . 38

*State v. Perkins,*
 911 S.W.2d 548, 551 (Tex. App.—Fort Worth 1995, no pet.). . . . . . . . . 26

*State v. Rangel*,
     980 S.W.2d 840, 843-45 (Tex. App.—San Antonio 1998, no pet.).. . . . . . 27

*State v. Smith*,
     66 S.W.3d 483, 489-90 (Tex. App.—Tyler 2001, no pet.).. . . . . . . . . . . . 26

*State v. Smith*,
     06-12-00174-CR, 2013 WL 624126
     (Tex. App.—Texarkana Feb. 20, 2013, no. pet. h.). . . . . . . . . . . . . . 35, 38

*Strickland v. Washington*,
     466 U.S. 668 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Strunk v. United States*,
     412 U.S. 434 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Bergfeld*,
     280 F.3d 486, 489 (5th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . 24, 36

*United States v. Cardona*,
     302 F.3d 494, 498 (5th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . 36-37

*United States v. Doggett*,
     906 F.2d 573, 582 (11th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . passim

*United States v. Serna-Villarreal*,
     352 F.3d 225, 230 (5th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . 24

*Wells v. State*,
     319 S.W.3d 82, 88 (Tex. App.—San Antonio 2010, pet. ref'd).. . . . . . . . 27

*Wiggins v. Smith*,
     123 S.Ct. 2557, 2536-2538 (2003). . . . . . . . . . . . . . . . . . . . . . . . . 21

*Williams v. Taylor*,
     529 U.S. 362, 405 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Zamorano v. State*,
84 S.W.3d 643, 649 (Tex. Crim. App. 2002). . . . . . . . . . . . . . . 25-26, 33, 35

**Statutes, Codes and Constitutional Provisions:**

U.S. CONST. XI. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

U.S. CONST. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**To the Honorable Justices of the Court of Appeals:**

Now Comes, Enrique Chavez Aguirre, by and through his attorney, Stanley G. Schneider, and files this appellate brief requesting that this Court reverse the trial court judgment and remand this cause to the trial court for a new trial and would show this Court the following:

## Statement of the Case

Appellant was indicted on June 25, 2003, and charged with the felony offense of aggravated sexual assault of a child wherein it was alleged that he did then and there unlawfully intentionally and knowingly cause the sexual organ of Yesenia Nunez, a person younger than fourteen years of age and not the spouse of the Defendant, to contact the mouth of Enrique Chavez Aguirre. CR 7. Appellant was arrested on or about October 26, 2013, over ten years after he was indicted. CR 8. The State filed its notice of intent to use extraneous offenses on September 6, 2014. The Complainant's medical records were filed on September 8, 2014, which were accompanied by an unsworn business record affidavit containing records of a physical examination conducted on May 29, 2003, by Dr. Rebecca Giradet. CR 18-30. Appellant was found guilty by a jury on October 22, 2014. The trial court assessed his punishment at 30 years confinement in the Texas Department of Criminal Justice.

1

Appellant filed a motion for new trial on November 2, 2014, wherein he alleged that his attorney was ineffective for not presenting character witnesses and not raising a speedy trial claim. Attached to the motion was an affidavit from Enrique Aguirre who stated that in November 2012, the Appellant renewed his permanent residency application with the United States Immigration Service. As part of that process, Appellant submitted his fingerprints to the United States Immigration Service and his permanent residency application was granted. Appellant's immigration attorney's file was attached to the motion for new trial which included copies of Appellant's permanent residency card that was renewed in December 2012. The trial court held a hearing incident to the motion for new trial and after hearing evidence denied the motion for new trial. Notice of appeal was timely given. The trial court found that Appellant was indigent for appellate purposes and ordered that he be furnished a free transcript.

## Issues Presented

**Issue One: The trial court abused its discretion in denying Appellant's Motion for New Trial.**

**Issue Two: Appellant was denied effective assistance of counsel based on trial counsel's failure to investigate the law and facts necessary to present a speedy trial claim based on the delay in his arrest from the time of the indictment in this cause on June 3, 2003, to his arrest on October 26, 2013.**

## Statement of Facts

The record reflects that on October 16, 2014, the trial prosecutor filed a *Brady notice* that included notice to the Appellant that the complainant and two witnesses told the prosecutor that there were events from their past involving the allegations made in 2003 that they did not remember. Specifically the *Brady notice* includes the following:

- The State met with Yesenia Nunez on 10/13/14 and during that meeting the Complainant stated that she does not remember which adult she told about the abuse first. She does not remember her ages during the assaults. She does not remember where the Defendant's sexual organ was when he sexually assaulted her anus.
- The State met with Marisa Nunez on 10/13/14 and during the meeting the Complainant stated that she does not remember the CAC interview where she said nothing happened.
- The State met with Andres Nunez on 10/13/14 and the Witness does not remember seeing the Defendant on top of his sisters and does not remember seeing the Defendant in bed with his sisters.

CR 39.

3

The trial commenced on October 16, 2014. Prior to trial, the State amended the indictment without objection.

The State's first witness was Bertha Martin who stated that in 2003 she worked at Mata Intermediate in the Alief Independent School District teaching the fifth and sixth grade. She stated that in 2003 Yeseia Nunez was one of her students. One morning, Yesenia came into the class room and broke down crying and told the witness that her stepfather was sexually abusing her. The State illicited the details of the complainant's initial outcry. She states that her stepfather is sexually abusing her. 3 R.R. 38 Yesenia was 11 or 12 years old at the time of the outcry.

Sharon Kinnard was the State's second witness. Ms. Kinnard was a counselor at Mata Intermediate School. The State presented Ms. Kinnard as a second outcry witness. Ms. Martin brought Yesenia Nunez to her office. Ms. Nunez was crying. 3 RR 59. Without objection, Ms. Nunez told the witness that her stepfather was touching her in a way that he should not have. 3 R.R. 64 Ms. Kinnard then reported Ms. Nunez's statement to CPS. 3RR 65

Tammy Hetmaniak, a forensic interviwer employed by the Children's Assessment Center was the third witness. Ms. Hetmaniak described the purpose and procedure used at the Children's Assessment Center when there is a report of child abuse. Ms. Hetmaniak interviewed Yesenia Nunez on two different occasions. The

4

witness stated that she had conducted over 6000 interviews of children involving some sort of abuse. 3 RR 88. The first interview of Yesenia was conducted on May 28, 2003. The State offered a picture of Yesenia and the witness as they appeared during the forensic interview.

Over objection, the State was allowed to present evidence of both of Yesenia's forensic interviews. The first interview was on May 18, 2003. Yesenia told her that her stepfather was fondling her on her privates. 3 RR 116. She told the witness that he was touching her front private parts and her back private parts. 3 RR 117. Yesenia identified her vagina as her front part and her butt as her back part. Yesenia stated that the abuse started when she was 9 or 10 years old. Yesenia indicated that her stepfather was touching her over her clothing. 3 RR 118.

The second interview occurred on May 28, 2003. Between the two interviews, Yesenia underwent a medical examination. Over objection, Yesenia discloses penetration to front genital area and her back genital area and oral sex by the defendant to her. 3 RR 122. Yesenia stated that her stepfather peed on her. 3 RR 125. During both interviews, Yesenia was emotional and appears to be embarrassed.

On cross examination, the witness stated that she had no independent recollection of her interview of Yesenia but relied on her review of the videos to refresh her memory.

Deputy Edwin Chapuseaux, a Harris County Sheriff Deputy was forwarded a report involving a child Yesenia Nunez to investigate on May 13, 2003. He contacted Yesenia at the Children's Assessment Center. The Deputy interviewed the teacher at school and the school counselor. He wrote an offense report. After observing Yesenia's forensic interview and conducting interviews from the school employees, the deputy identified appellant as a suspect. The witness stated that the offenses occurred at 13327 Bassford Drive Houston, Texas 77083 in Harris County, Texas. The witness attempted to interview the Appellant.

The witness stated that after the outcry, Yesenia and her siblings went to live with her aunt and uncle. He did not know their relation to Appellant or if they influenced her statements. 3 RR 158.

The complainant's brother Andres Nunez, Junior testified. He identified his mother as Maria Socorro Albarrow. In 2003, his mother had a relationship with Appellant. 3 RR 172. Appellant was living at his house. The house had two bedrooms. Five people lived in the house. Andres slept in a bed with his two sisters. The witness described times that Appellant would go into his bedrooom with Yesenia and shut the door. He would force Andres to stay in another room. 3 RR 195.

When he was 9, CPS took him away from his mother and sent him to live with his aunt and uncle. He never lived with mother again.

6

On cross examination, Andres stated that Enrique Jr. Appellant's said visited them and went to Hicks Elementary School with him. Enrique Jr. slept on the couch in the living room.

Deputy Chapuseaux was recalled by the Defense. The witness stated that his prior testimony was based on his refreshing his memory from the report rather than based on his independent recollection. His report did not document who was living with Appellant and the complainant at the time of the incident. 4 RR 7. At some point during the original investigation, the witness contacted Hicks Elementary School regarding the Appellant's son Enrique Aguirre Jr. 4 RR 8. The witness believed that Enrique Aquirre Jr. lived with Appellant at the time of the offense. The complainant's Aunt called the police. At one point Enrique Jr. was found at the elementary school. At some point, Enrique Jr. was taken out of the school and disappeared.

Yolanda Alpough, an employee of the Department of Family and Protective Services concerning her investigation of the allegations of Yesenia Nunez. The witness refresh her memory of her investigation by reviewing her report that was in possession of the prosecutor and the tape of the forensic interview. 4 RR 19. Without objection, Ms.Alpough repeated the allegations made by Yesenia to her. 4 RR 21. After she repeated the story, Yesenia was transported to the Children's

Assessment Center because she said that she had been sexually abused and an investigation had to be conducted. The witness stated that she interviewed Yesenia mother who did not believe the allegations. Ms. Alpough stated that Appellant's son was living with the family at the time of the allegations. 4 RR 32. Ms. Alpough stated that Yesenia told her that Appellant tried to have sexual assault with her. Yesenia never told Ms. Alpough that Appellant engaged in oral sex on her. 4 RR 39.

Dr. Rebecca Girardet, a medical doctor and an associate professor in the department of pediatrics testified concerning her examination of Yesenia on May 29, 2003. A copy of the medical records were introduced into evidence. Yesenia indicated that Appellant engaged in vaginal sex and anal sex. There is no indication of oral sex. 4 RR 53. The complainant stated that Appellant did not ejaculate. The physical examination of Yesenia looked normal with no injuries or scarring. There was nothing in the examination that indicated that Yesenia had been sexually assaulted. The doctor explained that often injuries are not visible because children do not know how to describe what actually happened or describe actual penetration. An intact hymen does not mean that a sexual assault did not occur. Dr. Girardet concluded that her physical examination neither proved or disprove sexual abuse. 4 RR 62.

Yesenia Nunez testified to describe the basis of the allegations against

Appellant. She did not remember when he moved in with her family. Yesenia stated that she lived her mother, sister brother and Appellant. His son Enrique would sometime stay with them. She remembered telling Ms. Martin that her mother's boyfriend was touching her. Ms. Martin took her to the counselor's office and told her story. Yesenia stated that she was reluctant to tell her story because she was scared. A CPS worker came to the school and she then went to the Children's Assessment Center.

Yesenia stated that one night after she showered, Appellant came into her room while she was in bed. Appellant got into bed with her. Appellant not wearing a shirt and he was in his underwear. Yesenia stated that Appellant went under the sheets and he started touching her legs and her thighs with his hands. 4 RR 106-108. Appellant either moved her shorts or removed them and began to touch her private parts. He then spread her legs apart and placed his face on her vagina and placed his tongue on her vagina. 4 RR 110-111. Appellant would not say anything nor did he ejaculate. Yesenia stated that the abuse was ongoing and that he would continuously touch her. The abuse would occur with her mother brother and sister in the house.

Yesenia stated that she never told her mother what was happening and at the time of the trial, they did not communicate. After she told the teacher at school, she never went home again. 4 RR 120.

9

Yesenia stated that at the time of the alleged incident five people lived in a small house. At times there were six people staying at the house. Her mother did not work. Appellant supported her family. Yesenia was comfortable living with her aunt. Yesenia did not tell Ms. Martin about the oral sex. On cross-examination, Yesenia recounted the oral sex experience with Appellant.

**Hearing on Motion for New Trial**

On January 2, 2014, a hearing was held incident to Appellant's motion for new trial. Appellant was not present. The Court took judicial notice of its file and all of its contents. The only witness called by Appellant was his trial attorney Mike Monks.

The record reflects that the charges were filed in this cause on July 24, 2003. The return on the indictment was filed on October 20, 2013.

Mr. Monks stated that the indictment indicated that it was received in the Clerk's office on July 26, 2003. Mr. Monks stated that the indictment was returned after being served on October 26, 2013. Mr. Monks stated that his file contained no notes or investigation of the law incident to Appellant's constitutional right to a speedy trial. When Mr. Monks first met Appellant he did not inquire about his immigration status. 7 RR 12-13. Mr. Monks stated that the Appellant's immigration status was not relevant to the defense of the allegations. 7 RR 13. Appellant told him that he was living in Mexico and his son was living in McAllen.

10

Mr. Monks reviewed Defense Exhibit Number 1 which contained a Notice of Action an I-797 which appears to be from the Department of Homeland Security dated December 3, 2012. The document reflects Appellant had to appear in Las Vegas on December 28, 2012, concerning his application for renewal of permanent residency status. The letter reflects that he is to be fingerprinted at the meeting. The fact that Appellant was in contact with Homeland Security. And, at the time of his arrest, Appellant had a permanent residence card. Mr. Monks stated that in order to become a permanent resident, one must have their fingerprints submitted for review. The documents in Defense Exhibit Number 1 indicates that Appellant was to appear in Las Vegas to pick up his new permanent residence card which was in his possession at the time of his arrest. 7 RR 21.

Mr. Monks believed that if there was a warrant for his arrest, he would not have been issued a permanent residence card.

There are no written notes indicating where Appellant was living. 7 RR 25. Mr. Monks file contains no information of Appellant's prior residence or his contacts with the United States. There were no notes contained in Mr. Monks file that indicates that he ever interviewed Appellant's son. 7 RR 27. Mr. Monks did not ask questions of Appellant's son concerning the type of father Appellant was because he was afraid that it might open the door to evidence that Appellant fled the country.

11

Mr. Monks did not conduct any investigation concerning Appellant entering the United States or living in the United States. And, there was no investigation in the law contained in his file. 7 RR 31. Mr. Monks admitted that he conducted no research pertaining to Appellant's Sixth Amendment right to a speedy trial. 7 RR 33.

Appellant told Mr. Monks that he left Harris County based on the advice of counsel. Mr. Monks did not investigate the basis fo that advice. Mr. Monks did not investigate Appellant's contact with his family in the United States. 7 RR 36-37. Mr. Monks entire file was introduced into evidence. Mr. Monks admitted that he did not investigate the law and facts incident to Appellant's Sixth Amendment Right to a Speedy Trial. 7 RR 43. Mr. Monks did not read any law incident the Sixth Amendment right to a speedy trial. Mr. Monks did not read the Supreme Court's decision in *Doggett v. United States*. He did not read *O'Brien v. United States*. Defense Exhibit Number 1 indicates that Appellant resided in Henderson, Nevada.

The trial court entered the following findings of fact at the conclusion of Appellant's hearing on Motion for New Trial:

> THE COURT: Back on the record. The record will further reflect that based on credible testimony of the Defendant's trial attorney, Michael Monks, and having presided over the trial of the Defendant the court makes the following findings:
>
> 1.     That the Defendant was charged on July 24, 2003, with the offense of aggravated sexual assault of a child alleged to have been

12

committed on or about May 23rd, 2003. Complainant was a Y-N-omitting her name, a child under 14 years of age.

2.      The complaint was filed in the case as a non-arrest, to be arrested case, on June 5, 2003, and a warrant was issued for the Defendant's arrest on June 6, 2003. The case was indicted on July 25th, 2003, and I guess a warrant was issued -- a capias issued July 26th, 2003, the day after the indictment. It was issued to the Harris County Sheriff's Office and executed October 26th, 2013, by the Harris County Sheriff's Office by placing the Defendant in custody. The record is devoid of how the Defendant was arrested, where he was arrested on the open warrant or if he was arrested or turned himself in or arrested by some authority somewhere else.

3.      After several settings the case was set for jury trial along with a Motion to Adjudicate Guilt hearing and a companion case, probation case pending in court, possession of a controlled substance case.

4.      On a plea of not guilty at the trial setting the jury found the Defendant guilty and after a punishment hearing the court assessed punishment at 30 years confinement in the Texas Department of Criminal Justice Institutional Division.

5.      The jury heard the case-in-chief as well as some character evidence put on by Defense.

6.      Character evidence and factual evidence in the form of the Defendant's son, Enrique Aguirre El Cantel, and the Defendant's brother, Jaime Chavez Aguirre, I believe. But then in the trial before the court Jaime was named Jaime Aguirre Chavez as opposed to the name of Jaime Chavez Aguirre.

7.      The State presented punishment evidence in the form of the complainant's sister and her initials will be MN to avoid giving her name on the record to the indictment, what's in the record. At the time of the alleged offense she was approximately a little bit over 14 years of age. The State offers punishment evidence as to extraneous offenses

13

allegedly committed by the Defendant.

8. Based upon the court's recollection of the evidence adduced at both phases of the Defendant's trial and the Motion for New Trial hearing the court finds that based upon the credible testimony of attorney Michael Monks, attorney Monks' decision to not raise the speedy trial issue pretrial or during trial was based upon reasonable trial strategy.

9. Attorney Monks' trial performance in using the strategy to not litigate the speedy trial issue, pretrial and for that matter during the trial, was not deficient performance inasmuch as the key factor in the four part Barker analysis prejudice set out -- Barker analysis for prejudice set out in the Barker versus Wingo case cited by Defense counsel. The reason for the delay namely -- strike that. Barker versus Wingo, namely. The reason for the delay relative to the issue of presumptive prejudice due to the delay from the time of the indictment to the time of the Defendant's arrest was due based upon Mr. Monks' credible testimony that the Defendant left the jurisdiction to avoid arrest and prosecution for the offenses contained in the indictment in Cause Number 0873112 -- strike that -- 0950986, and for the pending case in Cause Number 0873112, possession of a controlled substance, probation violation case that was then pending.

10. The court finds that from the record in the trial of the cause, the evidence deduced at the Motion for New Trial as to the other two Barker factors, the Defendant did assert his right to a speedy trial after his arrest and the Defendant was tried on the merits and has not shown that the delay in going to trial in this case prejudiced the Defendant; although, a delay of 10 years is presumptively and was presumptively prejudicial.

11. During the trial Attorney Monks called the Defendant's son, Enrique Aguirre El Cantel, to testify as to the character of the Defendant as well as some details as to the timeframe when this witness lived with the Defendant -- with the complainant and complainant's family members. The court finds that attorney Monks' strategy of not developing further this line of inquiry was a strategic decision not to

delve further into the living arrangements or other details as to why -- as to why the witness and the Defendant left shortly after -- well, left when they left. This decision was made so as not to open the door to further cross-examine by the State as to when the Defendant moved out of the house and why he went to abscond.

12. Based on the credible testimony of attorney Monks, and the court's recollection of the trial the court finds that the evidence adduced at the Motion for New Trial hearing does not establish that had attorney Monks litigated the speedy trial issues that the Defendant would prevail on its appeal of the court's ruling as to any denial of the Motion to Dismiss the indictment for lack of a speedy trial and as such a violation of the Texas and U. S. Constitutional Provisions for speedy trial under the 14th Amendment to the U.S. Constitution and the applicable Texas Constitutional Provisions.

13. The court finds that once arrested the Defendant exercised his right to a speedy trial and any delay between the indictment and his ultimate arrest was due largely to the Defendant's absenting himself from the country.

14. Based on the credible testimony of attorney Monks, the court finds that attorney Monks had no knowledge or information from the Defendant or his family that the Defendant was living in the U. S. at any time from the date of the indictment to the time of a rest.

15. Based upon the credible testimony of attorney Monks, the court finds that attorney Monks was not made aware that the Defendant had set out the city of Henderson, Nevada, as his place of residence when he used a Form I-90 and applied for a replacement of an alien registration card on 11-26-2012, using the name Eugene -- no, Enrique Aguirre Chavez, as set out in Defendant's Exhibit Number 1 adduced at the Motion for New Trial hearing.

16. Based upon the credible testimony of attorney Monks, the court finds that Defendant, while aware of the pretrial, that the Defendant's son who lived in McAllen, Texas, was unaware as to whether the

Defendant lived in Texas, in Nevada or in Mexico; nor was he aware that the Defendant reentered the country a number of times over the period -- 10 year period from 2003 to 2013 to visit his son in McAllen, Texas, if he did.

17. The court, based upon the court's recollection of the trial and attorney Monks' credible testimony, Monks' failure to call additional character witnesses at the guilt or innocence stage was a reasonable strategic decision so as to not to run the risk of opening the door to more extraneous offenses that the State had noticed to Defense counsel by means of pretrial motions filed by the State.

18. The court finds that the facts in Doggett versus United States cited by Defense counsel, the court finds that those facts are distinguishable from the facts in this case in that the delay in arresting the Defendant in this case was not due to negligence on the part of the State. The only evidence of any potential negligence was the Defendant receiving a copy of his alien registration card, which he applied for and apparently received or, at least, he was given notice that it was going to be in the mail, which involved one visit to the Homeland Security office in Las Vegas, I believe, and the taking -- and probable taking of fingerprints at that time. State's Exhibit Number 1 reflects the name of the applicant as Enrique Aguirre Chavez, which is different from any order of names from the name in the indictment of Enrique Chavez Aguirre. That is the single bit of evidence in front of the court concerning any possible negligence by the State. Given the fact that attorney Monks had in his possession information that the Defendant voluntarily absented himself, attorney Monks' decision not to pursue a speedy trial dismissal action was one based on trial strategy.

19. The record before the court is devoid of any facts that demonstrate by a preponderance of the evidence that attorney Monks' representation fell below an objective standard of reasonableness. And that but for attorney Monks' unprofessional errors as to investigating the case, researching the law, the outcome of the jury trial would have been different or the outcome of the attempted or actual filing of the Motion to Dismiss for Want of Speedy Trial would have been different.

16

20.     Based upon the trial court's recollection of the trial of the cause and having reviewed Defendant's Exhibits 1, 2 and 2-A admitted at the Motion for New Trial hearing, considering Defendant's memorandum of law filed, the Motion for New Trial on its face, arguments of counsel, the court finds that attorney Monks did conduct investigation of the facts and while not researching the case law, specifically, relative to speedy trial issues he did recognize the key Barker factor as to the reason for the delay such that he did render effective assistance of counsel.

21.     Accordingly, based on the totality and the representation by Mr. Monks and the particular circumstances in the trial of this case the court finds that attorney Michael Monks rendered reasonably effective assistance of counsel and accordingly the Motion for New Trial is denied.  That concludes this hearing.  7 RR 6-13

Appellant objected to the findings entered by the Court.  7 RR 13.

### Argument and Authorities
### in Support of Issues One and Two

The trial court abused its discretion in denying Appellant's motion for new trial.  The Court found that the trial counsel failed to research the case law relative to Appellant's constitutional right to a speedy trial.  The trial court also found that trial counsel was not aware of the facts that Appellant resided in Henderson, Nevada and had applied for and renew his permanent residence with the Department of Homeland Security.  Thus, trial counsel failed to investigate the law necessary to present a claim that Appellant's right to a speedy trial was abrogated.  The essence of a sixth amendment right to effective assistance of counsel is based on trial counsel's investigation of the law and facts necessary to present a defense.  In addition to the

17

factual allegations presented, trial counsel was retained in 2013 upon Appellant's arrest to defend an allegation of aggravated sexual assault of a child.

## Ineffective Assistance of Counsel

The United States and Texas Constitutions guarantee all persons the right to counsel during any criminal proceeding. The right to counsel is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S.Ct. 1441, 1449 n.14, 25 L.Ed.2d 763 (1970). Claims of ineffective assistance of counsel are evaluated under the test promulgated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed 2d 674 (1984), which held that effectiveness of counsel's assistance is to be evaluated against the backdrop of the rationale behind the Sixth Amendment's purpose in mandating effective counsel, which is to ensure a fair trial. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. First, an accused must prove that counsel's performance was deficient, which requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the accused must show that counsel's deficiency prejudiced the defense, which requires showing that counsel's errors deprived the defendant of a fair trial: that is, a trial whose result is reliable. *Id.* In reviewing a claim of ineffective assistance, the court must make every effort to avoid hindsight and evaluate the attorney's conduct from counsel's perspective at the time of his representation. *Strickland*, 466 U.S. at 690, 104 S.Ct. at

18

2066. Thus, to prevail on a claim of ineffective assistance of counsel, the defendant must overcome the strong presumption that, under the circumstances, the attorney's conduct might be considered sound trial strategy. *Id*. To overcome this presumption, a convicted defendant must identify the particular acts or omissions that he alleges are not the result of reasonable professional judgment. *Id.* The court must then determine whether the identified acts or omissions fell outside the wide range of professionally competent assistance. *Id.*

Whether a defendant's counsel was effective "must be determined upon the particular circumstances of each individual case." *Ex parte Raborn*, 658 S.W.2d 602, 605 (Tex. Crim. App. 1983). Generally, the court must view trial counsel's performance as a whole. Thus, even though no single instance or error may be sufficient standing alone to constitute ineffective assistance of counsel, several or multiple errors may "compel such a holding." *Ex parte Welborn*, 785 S.W.2d 391, 396 (Tex. Crim. App. 1990).

Among counsel's duties is that of making an independent investigation of the facts of his client's case. *Ex parte Ewing,* 570 S.W.2d 941, 947(Tex. Crim. App. 1978). The Court of Criminal Appeals has stated:

> It is fundamental that an attorney must have a firm command of the facts of the case as well as the law before he can render reasonably effective assistance of counsel. [citations omitted] A natural consequence of this

notion is that counsel also has a responsibility to seek out and interview potential witnesses and failure to do so is to be ineffective, if not incompetent, where the result is that any viable defense available to the accused is not advanced.

*Ex parte Lilly,* 656 S.W.2d 490 (Tex. Crim. App. 1983).

In addition to his duty to engage in a reasonable investigation of the law and the facts impacting his client's case, trial counsel has a duty to "present all available evidence and arguments to support the defense of his client." *Jackson v. State*, 857 S.W.2d 678, 683 (Tex.App.– Houston [14th Dist.], 1993). Trial counsel also has a duty to subject the State's case to the crucible of adversarial testing and may not take it upon himself to play the trial judge's role by assuming that evidence that is clearly prejudicial and yet subject to exclusion is admissible. *See Rodriguez v. Young*, 906 F.2d 1153, 1161 (7th Cir. 1990) ("Criminal defense lawyers should not preempt judges by making their own negative rulings on close motions concerning crucial testimony.").

Strategic choices made after a thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable under ineffective assistance of counsel claims. *Ex parte Kunkle*, 852 S.W.2d 499, 505 (Tex. Crim. App.), *cert. denied*, *Kunkle v. State*, 114 S.Ct. 122, 126 L.Ed.2d 87 (1993). However, strategic choices made after a less than complete investigation are reasonable only to

the extent that "reasonable professional judgments support the limitations on investigation. *Id.* at 505.

The Supreme Court has made clear that a reviewing court's "principal concern" is not whether counsel's conduct was strategic, "but rather whether the investigation supporting counsel's decision ... *was itself reasonable* [because] *Strickland* does not establish that a cursory investigation automatically justifies a tactical decision..." *Wiggins v. Smith*, 123 S.Ct. 2557, 2536-2538 (2003) (emphasis in original). *See also Lewis v. Dretke*, 355 F.3d 364, 368 (5th Cir. 2003)(emphasis added) ("It is axiomatic -- particularly since *Wiggins – that such a decision cannot be credited as calculated tactics or strategy unless it grounded in sufficient facts, resulting in turn from an investigation that is at least adequate for that purpose.*"); *Moore v. Johnson*, 194 F.3d 586, 604 (5thCir. 1999) ("The Court is ... not required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all.").

Trial counsel's failure to engage in the full pretrial legal and factual investigation that would have resulted in the exclusion of critical evidence was objectively deficient. *See Sanders v. State*, 715 S.W.2d 771, 775 (Tex. App.– Tyler, 1986) (failure to investigate facts and circumstances of confession and to suppress

21

confession was deficient conduct); *Doles v. State*, 876 S.W.2d 741, 746 (Tex. App.–Tyler, 1989) (failure to object to extraneous offenses was objectively deficient conduct).

In *Banks v. State*, 819 S.W.2d 676, 682 (Tex. App.– San Antonio 1991, pet. ref'd), the Court found ineffective assistance of counsel because of trial counsel's failure to be familiar with the law applicable to the case. The Court aptly noted that "[c]ounsel has a duty to bring to bear such skill and knowledge as will render the trial a 'reliable adversarial testing process.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. at 688.

In *Ex parte Ybarra*, 629 S.W.2d 943, 949 n.15 (Tex. Crim. App. 1982), a general failure to object contributed to the Court's finding of ineffective assistance of counsel. Additionally, the lodging of the wrong objection on other occasions contributed to the finding. *Id.* at 951 n.25. In *Ex parte Welborn*, 785 S.W.2d 391, 392 (Tex. Crim. App. 1990), a failure to object to two instances of hearsay and a failure to object to an extraneous offense constituted three of six reasons that the Court found constituted ineffective assistance of counsel. In response to the claim that there was no objection because the extraneous offense might have been admissible as res gestae, the Court firmly noted:

The possibility that the statement was admissible under some theory of

22

law should not alleviate counsel's burden to put the State's case to that "adversarial testing process" contemplated by the *Strickland* standard. By failing to object, counsel insured that no such testing process took place.

*Welborn*,785 S.W.2d at 395.

Additionally, the Court in *Welborn* noted that some cross-examination evidenced "that counsel was confused as to the applicable law." *Id.* at 394. Here, as in *Welborn*, the record would plainly indicate that Defendant's counsel was unfamiliar with basic rules of evidence and the rules regarding how to preserve error. The record further reflect that counsel was woefully unprepared to deal competently with the facts of the case, both because of insufficient pretrial investigation and because of his failure to sufficiently prepare to deal with the facts that he did know. The trial court found that trial counsel failed to familiarize himself with the law necessary to present a speedy trial claim which prejudice Appellant. Appellant asserts that based on the evidence presented, no trial should ever have been held and the charges against him should have been dismissed.

## Law Pertaining to Speedy Trial

The right to a speedy trial is guaranteed by the Sixth Amendment and applies to state criminal proceedings through the Fourteenth Amendment. U.S. Const. amend. VI; *Klopfer v. North Carolina*, 386 U.S. 213, 223-26 (1967). A violation of the

23

speedy trial right, if found, requires dismissal of the indictment. *See Strunk v. United States*, 412 U.S. 434, 439-40 (1973). In *Barker v. Wingo*, 407 U.S. 514 (1972)*, the Supreme Court prescribed several factors to be considered when evaluating a speedy trial claim:

(1) the length of the delay,

(2) the reason for the delay,

(3) the defendant's assertion of his right to speedy trial, and

(4) prejudice to the defendant.

*Barker,* 407 U.S. at 530.

### *A. Length of the delay*

The first *Barker* factor, the length of the delay, consists of a two-part inquiry. First, the delay must be extensive enough to give rise to a presumption of prejudice that triggers examination of the remaining *Barker* factors. *See Doggett v. United States*, 505 U.S. 647, 651-52 (1992); *see also Barker*, 407 U.S. at 530-31. As the Supreme Court has observed, courts generally view a delay of approximately one year as sufficient to require a full *Barker* analysis. *Doggett*, 505 U.S. at 652. This is the rule in the Fifth Circuit. *United States v. Serna-Villarreal*, 352 F.3d 225, 230 (5th Cir. 2003) (citing *United States v. Bergfeld*, 280 F.3d 486, 488 (5th Cir. 2002).

Under Texas law, there is no precise time period that triggers the *Barker* analysis. However, the Court of Criminal Appeals has held that while a delay of four months is not sufficient, a seventeen-month delay is. *Cantu v. State*, 253 S.W.3d 273, 281 (Tex. Crim. App. 2008) (citing *Pete v. State*, 501 S.W.2d 683, 687 (Tex. Crim. App. 1973) ("Appellant herein was tried [for rape] approximately four months after he was bench warranted from the Texas Department of Corrections. It is our opinion that this short period of time could in no way be construed as 'presumptively prejudicial.'"); *Phillips v. State*, 650 S.W.2d 396, 399 (Tex. Crim. App. 1983) ("Although there is no precise length of delay which irrefutably constitutes a violation of the right to a speedy trial in all cases, . . . a seventeen month delay is sufficient to raise the issue."). Texas courts generally hold that depending on the nature of the charges, a post-accusation delay of about one year is "presumptively prejudicial." *See Orand v. State*, 254 S.W.3d 560, 566 (Tex. App.—Fort Worth 2008) (quoting *Doggett*, 505 U.S. at 652).

Once the accused shows that the interval between the accusation and trial has crossed the threshold dividing "ordinary" from "presumptively prejudicial" delay, under the length-of-delay factor, the court must then consider the extent to which that delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. *Zamorano v. State*, 84 S.W.3d 643, 649 (Tex. Crim. App. 2002) (quoting

*Doggett*, 505 U.S. at 652, 112 S. Ct. at 2690-91). This second inquiry is significant to the speedy trial analysis because the "presumption that pretrial delay has prejudiced the accused intensifies over time." *Id.*; *Orand*, 254 S.W.3d at 566.

In the present case, the more than ten year delay between Defendant's indictment and his arrest is amply sufficient to trigger a speedy trial analysis under inquiry. *See, e.g.*, *Doggett*, 505 U.S. at 657-58, 112 S. Ct. at 2693-94 (granting relief based on an eight-and-a-half-year delay between Doggett's indictment and arrest); *Zamorano*, 84 S.W.3d at 649 (reversing trial and appellate courts' failure to grant relief based on a two-year, ten-month delay between appellant's arrest and the hearing on his speedy trial motion); *State v. Perkins*, 911 S.W.2d 548, 551 (Tex. App.—Fort Worth 1995, no pet.) (affirming relief granted based on two-year, nine-month delay between indictment and the speedy trial hearing); *see also Shaw v. State* 117 S.W.3d 883, 890 (Tex. Crim. App. 2003) (a delay of 38 months between indictment and trial requires a presumption of prejudice); *Dragoo v. State,* 96 S.W.3d 308, 316 (Tex. Crim. App. 2003) ("The court of appeals also held that the 3½ year delay between appellant's arrest and trial was 'patently excessive' and, in itself, 'presumptively prejudicial' to appellant's defense. In accordance with precedent, we must agree with that assessment."); *Gonzales v. State*, PD-0724-12, 2013 WL 765575 (Tex. Crim. App. Feb. 27, 2013); *State v. Smith*, 66 S.W.3d 483, 489-90 (Tex. App.—Tyler 2001,

no pet.) (affirming relief granted based on five-year delay between date of charging instrument and resolution of the case); *State v. Rangel*, 980 S.W.2d 840, 843-45 (Tex. App.—San Antonio 1998, no pet.) (affirming relief granted based on twenty-month delay between defendant's arrest and the speedy trial hearing).

In this case, since the delay stretches far beyond the minimum needed to trigger the inquiry, this factor should weigh very heavily in favor of the Defendant. The over ten year delay in this case is not only presumptively prejudicial, it stretches far, far beyond the approximately twelve-month minimum delay necessary to trigger judicial examination of a speedy trial claim. Thus, the length of the delay here should weigh extremely heavily against the State and in favor of the Defendant.

### B. Reason for the delay

Once it has been determined that a presumptively prejudicial delay has occurred, the State bears the initial burden of providing a justification for the delay. *Wells v. State*, 319 S.W.3d 82, 88 (Tex. App.—San Antonio 2010, pet. ref'd). The weight assigned to a state's reasons for post-accusation delay depends on the reasons proffered. *Barker*, 407 U.S. at 531. At one extreme, a deliberate delay to disadvantage the defense is weighted heavily against the state. *Id.* At the other end of the spectrum, delays explained by valid reasons, such as a missing witness, weigh in favor of the state. *See Cowart v. Hargett*, 16 F.3d 642 (5th Cir. 1994) (discussing *Barker*).

27

Between these extremes, a more neutral reason, such as negligence or overcrowded courts, should be weighted less heavily, but nevertheless should be considered because the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531 (viewing negligence as a "more neutral reason…[that] should be weighted less heavily" than an intentional delay). Finally, when no valid reason is offered, the court may presume that the reason lies somewhere between a deliberate delay and a valid reason that would justify the delay. *See Bosworth v. State*, 06-12-00058-CR, 2013 WL 563321 (Tex. App.—Texarkana Feb. 15, 2013, no. pet. h.) (citing *Dragoo*, 96 S.W.3d at 314).

Under Texas law, when a defendant's location is known, or could have easily been discovered, the State is required to exert due diligence in obtaining their presence for trial. *State v. Jones*, 168 S.W.3d 339, 345 (Tex. App.—Dallas 2005, pet. ref'd); Guajardo v. State, 999 S.W.2d 566, 570 (Tex. App.—Hous. [14th Dist.] 1999, pet. ref'd). In *Guajardo*, the court found this factor to weigh very heavily against the State, verging on a deliberate hampering of the defense, where the sheriff's department used an incorrect address to try to locate the defendant. The court observed:

> At best, the TDHS and the Sheriff's Department were grossly negligent in their efforts to locate the appellant. While we do not believe that their actions were done as a deliberate attempt to hamper the appellant's

defense, their actions do not fall very far below this level, and they are certainly more than mere negligence.

*Id.* Similarly, in *Phillips*, the court found the state responsible for the delay and weighed this factor heavily against the State when it appeared that the State's own files contained the information necessary to locate the defendant. 650 S.W.2d 396, 400 (Tex. Crim. App. 1983). The court noted, "[t]he speedy trial right is too important to sanction neglect, even if nonwilful." *Id.*

In *Doggett*, the Court found that the government was negligent in failing to locate, track down, and apprehend the defendant. In *Doggett*, government agents learned that the defendant had left for Colombia a few days before police officers attempted to arrest him at his parents' house in North Carolina in 1980. *Doggett*, 505 U.S. at 648-49. A DEA agent placed the defendant's name in the TECS database to catch him upon his return, but the entry lapsed in less than a year. *Id.* at 649. The same agent later learned that the defendant was arrested in Panama in 1981, but rather than initiate extradition proceedings he simply asked Panama to expel the defendant to the United States. *Id.* The State Department learned that the defendant left Panama for Colombia in 1982, but did not communicate this information to the DEA. *Id.* The original DEA agent on the case later fortuitously learned of the defendant's move in 1985 but made no effort to confirm this information or track down the

defendant either abroad or in the United States. *Id.* at 649-50. In fact, the defendant had returned to the United States in 1982. *Id.* at 649. He settled in Virginia, married, earned a college degree, and found a steady job, all under his own name. *Id.* In 1988, the Marshal's Service ran a credit check on several thousand people subject to outstanding arrest warrants and located the defendant within minutes. *Id.* at 650. The Court held that the government's lethargic efforts to apprehend Doggett constituted "findable negligence." *Id.* at 652-53.

In *Orand v. State*, 254 S.W.3d 560, 563 (Tex. App.—Fort Worth 2008, pet. ref'd), the State provided no explanation for its failure to make even a single effort to apprehend the defendant. The court held that in the absence of any explanation, the delay weighed heavily against the State. The record in *Orand* revealed that the grand jury returned an indictment on June 9, 1994, charging the defendant with indecency with a child. The incident had occurred in June 1992 in the City of Lake Dallas in Denton County. The defendant was eighteen or nineteen years old at the time of the offense and was the uncle of the victim. Although a warrant issued in 1994 for the defendant's arrest, he did not learn of the indictment or warrant for almost twelve years. The defendant was living with his mother, the grandmother of the victim, for the entire twelve-year period. In February 2006, the defendant finally learned of the warrant and immediately turned himself in to authorities. The court

found that because the defendant could easily have been located, the state was negligent in failing to apprehend him and bring him to trial. *Id.*

Likewise, in the present case, this factor should weigh heavily against the state because the government's negligence is responsible for the lengthy delay between Defendant's indictment and arrest. The record reflects that he applied for a renewal of his permanent residency status with the United States Government. The record reflects that he was living in Henderson, Nevada. The record reflects that he retained an attorney in McAllen Texas and that he was traveling back and forth from Mexico to the United States. The record reflects that Appellant was fingerprinted as part of the renewal of his permanent residency status. At no time was he arrested on any outstanding warrants. Clearly, the State was negligent in issuing any warrant associated with these charges.

The State's negligence, however innocent, militates against the State. *Branscum v. State*, 750 S.W.2d 892, 895 (Tex. App.—Amarillo 1988, no pet.); *State v. Flores*, 951 S.W.2d 134, 141 (Tex. App.—Corpus Christi 1997) (delay caused by negligent administrative errors in district attorney's office militates against the State in Sixth Amendment analysis); *Orand v. State*, 254 S.W.3d 560 (Tex. App.—Fort Worth 2008) ("In the absence of any explanation, the delay weighs against the State."). When the government's negligence causes delay and when presumed

prejudice is uncontroverted, the defendant should be afforded relief on speedy trial grounds. *Empak* at 624; *Doggett*, 112 S.Ct. at 2693. This factor weighs heavily against the State.

The fact that the Defendant left the country is of no material significance to this factor. He then returned to the United States. He lived openly in Henderson Nevada and in McAllen Texas with his son. His brothers lived in Houston. He was readily accessible to be formally charged, arrested and brought to trial. More importantly, he left the country before he was indicted or knew of any actual charges were filed against him. When he returned the United States, he had no reason to know that he should assert his rights to a speedy trial and could not have possibly acquiesced in the lengthy delay. *See Doggett*, 505 U.S. at 652; *c.f. United States v. Escamilla*, 244 F. Supp. 2d 760, 769 (S.D. Tex. 2003) (distinguishing from the facts of *Doggett* and finding the defendant's conduct of fleeing from authorities post indictment was the primary reason for the delay).

### C. Assertion of the right

The nature of the speedy trial right makes it impossible to pinpoint a precise time in the process when the right must be asserted or waived, but that fact does not argue for placing the burden of protecting the right solely on defendants. *Barker*, 407 U.S. at 527, 92 S. Ct. at 2190. The right to a speedy trial is constitutionally

32

guaranteed and, as such, is not to be honored only for the vigilant and the knowledgeable. *Id.* at n. 527, 92 S. Ct. at 2190 (quoting *Hodges v. United States*, 408 F.2d 543, 551 (8th Cir. 1969)). Consequently, the United States Supreme Court has expressly rejected the proposition that a defendant who fails to demand a speedy trial has forever waived his right. *Id.* at 528, 92 S. Ct. at 2191 (stating "[w]e reject, therefore, the rule that a defendant who fails to demand a speedy trial forever waives his right."). This does not mean, however, that a defendant has no responsibility to assert his right. *Id.*, 92 S. Ct. at 2191. The better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right. *Id.*; *Orand v. State*, 254 S.W.3d 560, 568 (Tex. App.—Fort Worth 2008).

In *Doggett*, the Court further explained that when a defendant does not know of the indictment or warrant he cannot be "taxed" for invoking his speedy trial rights only after his arrest. *Doggett*, 505 U.S. at 653-54. Moreover, as the Court in *Doggett* asserted, a defendant's failure to assert his speedy trial rights at the earliest possible opportunity does not trigger a waiver of the right in absence of evidence that a waiver was intended. *Doggett*, 505 U.S. at 654. Indeed, it is the duty of state, not the defendant, to bring the defendant to trial. *Zamorano*, 84 S.W.3d at 651 (citing *Barker*, 407 U.S. at 534-36).

Embracing the holding of the *Doggett* Court, in *Deluna*, the court held that because the defendant did not know there was an indictment against him, was not represented by counsel, and had not been notified of his right to a speedy trial, this factor would weigh against him only slightly. *Deluna v. State*, 2012 Tex. App. LEXIS 7209, 14-15 (Tex. App.—Dallas Aug. 27, 2012). Similarly, in *Flores*, the court declared that "a criminal defendant cannot be expected to demand a trial before he is charged." *State v. Flores*, 951 S.W.2d 134, 141 (Tex. App.—Corpus Christi 1997, no pet.)

Moreover, it seems that the issue of whether the defendant's speedy trial right was timely asserted should be treated differently by the trial court on a motion to dismiss then on appeal. This is not expressly stated anywhere in the case law. However, several appellate decisions contend that a defendant should not be able to use a speedy trial claim to try to get out of actually having to go trial. For example, in *State v. Manley*, the court averred that a defendant's lack of a timely demand for a speedy trial "indicates strongly" that he or she did not really want a speedy trial; thus, inaction weighs more heavily against a violation the longer the delay becomes. *State v. Manley*, 220 S.W.3d 116, 128 (Tex. App.—Waco 2007, no pet.) (citing *Harris v. State,* 827 S.W.2d 949, 957 (Tex. Crim. App. 1992) (finding that the defendant failed to timely assert his speedy trial rights, but also upholding the trial

court's conclusion that the defendant's speedy trial rights were violated). Similarly, in *Rivera v. State*, the court held that a defendant's motion to dismiss for lack of a speedy trial did not amount to a request for speedy trial and thus, the defendant's lack of demand for a speedy trial weighed heavily against the defendant where the motion's primary objective was not to gain a speedy trial but was instead, an attempt to have the charge against the defendant dismissed. *Rivera v. State*, 990 S.W.2d 882, 891 (Tex. App.—Austin 1999, pet. ref'd); *see also Dokter v. State*, 281 S.W.3d 152, 158 (Tex. App.—Texarkana 2009, no pet.) (holding that nearly five year delay between the defendant's arrest and trial did not violate his speedy trial right).

Unlike these situations, the delay at issue in this case is between the date of the indictment and the subsequent arrest as opposed to the time period between the date of arrest and subsequent trial. The Defendant has demonstrated "no affirmative desire for delay." *See Zamorano*, 84 S.W.3d at 652. He did not file any time consuming pretrial motions, or ask the court for continuances on these charges, or delay the proceedings through his own actions. *Compare State v. Smith*, 06-12-00174-CR, 2013 WL 624126 (Tex. App.—Texarkana Feb. 20, 2013, no. pet. h.) (finding that the defendant exhibited a desire for the delay between his arrest and trial by filing for continuances and then remaining inactive for six years, but nevertheless concluding that the defendant's speedy trial rights were violated). *See Deluna v. State*, 05-10-

35

01339-CR, 2012 WL 3642308 (Tex. App.—Dallas Aug. 27, 2012, pet. ref'd) ("By the time appellant was finally arrested and notified of the indictment and the specific charges against him, eight years had already passed from the time of the offense. At that time, it was too late for appellant to obtain a 'speedy trial.'"). Accordingly, this factor should weigh in the Defendant's favor, or at the very least, carry neutral weight. *United States v. Cardona*, 302 F.3d 494, 498 (5th Cir. 2002) (finding the third factor to weigh heavily in the defendant's favor where there was no evidence that he knew of the charges against him until his arrest); *United States v. Bergfeld*, 280 F.3d 486, 489 (5th Cir. 2002) (concluding that the defendant's lack of knowledge of the indictment until after it was unsealed meant this factor weighed exclusively in defendant's favor).

### D. Prejudice

The final prong of the *Barker* test requires an assessment of prejudice "in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. These interests include: (1) prevention of oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility of impairment to the defense. *Id.; Goodrum v. Quarterman*, 547 F.3d 249, 260 (5th Cir. 2008). Stated differently, "unreasonable

delay between formal accusation and trial threatens to produce" these recognized categories of harm. *Doggett*, 505 U.S. at 654.

Under Texas law, when the delay between indictment and arrest is found to be presumptively prejudicial, the burden is on the state to rebut or extenuate the presumption of prejudice. *Gonzales v. State*, PD-0724-12, 2013 WL 765575 (Tex. Crim. App. Feb. 27, 2013). In *Gonzales*, a recent unpublished opinion issued by the Court of Criminal Appeals, the Court clarified this point, explaining that where the delay is presumptively prejudicial, *Doggett* absolves the accused from the requirement of demonstrating prejudice. *Id.* In *Gonzales*, the Court held that the court of appeals had incorrectly placed the burden on the defendant to demonstrate prejudice. The Court found that "the six-year delay between the appellant's indictment and his arrest 'presumptively compromise[d] the reliability of a trial in ways that neither party can prove or, for that matter, identify.'" *Id.* Therefore, under *Doggett*, the court of appeals should have reviewed the record not for proof of prejudice but rather for evidence of the rebuttal or extenuation of prejudice. *Id.*

In other words, under *Doggett,* if "'the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted,' then the defendant is entitled to relief." *United States v. Cardona*, 302 F.3d 494, 499 (5th Cir. 2002) (quoting *Doggett*, 505 U.S. at 658); *see*

*State v. Smith,* 06-12-00174-CR, 2013 WL 624126 (Tex. App.—Texarkana Feb. 20, 2013, no. pet. h.) (concluding that the trial court's finding that the Defendant made a prima facie showing of prejudice shifted the burden to the State to show that the defendant suffered "no serious prejudice beyond that which ensued from the ordinary and inevitable delay) (citing *State v. Munoz,* 991 S.W.2d 818, 826 (Tex. Crim. App. 1999); *Puckett v. State,* 279 S.W.3d 434, 437 (Tex. App.—Texarkana 2009, no pet.)). In *Smith,* the court found the prejudice factor to weigh in the defendant's favor where there was a prima facie finding of prejudice under the first *Barker* factor and the state failed to present evidence to rebut the presumption of prejudice, even though the defendant did not present any testimony or evidence to show prejudice. *State v. Smith,* 06-12-00174-CR, 2013 WL 624126 (Tex. App.—Texarkana Feb. 20, 2013, no. pet. h.).

In the present case, the over ten year delay creates a prima facie showing of prejudice suffered by the Defendant. Therefore he should be entitled to relief because the state cannot show that the Defendant has not suffered prejudice by this lengthy delay. Furthermore, even if the state presents some evidence to extenuate the presumption of prejudice triggered by the lengthy delay in this case, he is nevertheless entitled to relief. The lengthy delay between the indictment and arrest

of the Defendant in this case severely impairs his ability to present a defense and therefore he has suffered prejudice.[1]

Impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown. *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193. Nevertheless, the possibility that dimming memories and loss of exculpatory evidence will diminish the accused's defense is the most serious interest that the right to speedy trial protects because the inability of a defendant to adequately prepare his case skews the fairness of the entire system. *Doggett*, 505 U.S. at 654, 112 S. Ct at 2692. Affirmative evidence of particularized prejudice is not essential to every speedy trial claim because excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or even identify. *Id.* at 655, 112 S. Ct. at 2693. And the presumption of prejudice grows and intensifies over time. *Id.* at 656, 112 S. Ct. at 2693. However, the presumption of prejudice to a defendant's ability to defend himself can be "extenuated ... by the defendant's acquiescence" in the delay. *Id.* at 658, 112 S. Ct. 2694.

*Doggett* is likely controlling on this issue here. In *Doggett*, eight-and-a-half years elapsed between the defendant's indictment and his arrest. *Id.* at 648, 112 S.

[1] Because Defendant was not confined and was unaware of the charges against him or of the warrant that had issued for his arrest, the first two interests are not at issue here.

39

Ct. at 2689. The defendant did not know of the charges against him, left the country for two years, then returned to the United States and passed unhindered through customs, settled in Virginia, married, earned a college degree, found a steady job, lived openly under his name, and stayed within the law. *Id.* at 649, 112 S. Ct. at 2689. Six years after the defendant returned to the United States, he was arrested. *Id.* at 650, 112 S. Ct. at 2690. After his arrest, the defendant raised a speedy trial claim. *Id.,* 112 S. Ct. at 2690. The trial court found that the government was negligent in its efforts to apprehend the defendant during the six years after he returned to the United States, but denied his speedy trial claim because it found that the defendant had not been prejudiced. *Id.* at 650, 112 S. Ct. at 2690. A split panel of the court of appeals affirmed. *See United States v. Doggett*, 906 F.2d 573, 582 (11th Cir. 1990).

The United States Supreme Court reversed the judgment of the trial court and of the Court of Appeals and found that the defendant's speedy trial rights had been violated by the six-year delay in his arrest after he returned to the United States. *Doggett*, 505 U.S. at 658, 112 S. Ct. at 2694. Concerning the prejudice prong of the Barker analysis, the *Doggett* Court explained that the defendant was not required to show prejudice:

> When the government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review,... and when the presumption of prejudice, albeit unspecified, is neither extenuated,

40

as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief.

*Id.*

Texas courts have likewise found prejudice where the length of the delay and the nature of the charge and evidence in the case presented a strong probability that the defendant's ability to present a defense was impaired. For example, in *Orand,* the Fort Worth Court of Appeals reversed the decision of the trial court and rendered a judgment of acquittal for the defendant, holding that the twelve-year delay between the indictment and arrest on a charge of indecency with a child impaired the defendant's ability to present a defense. *Orand v. State*, 254 S.W.3d 560, 570 (Tex. App.—Fort Worth 2008). In *Orand*, the defendant was indicted in June of 1994 on a charge of indecency with a child. *Id.* at 563. The defendant was 18 years old in 1992 at the time of the offense and was the uncle of the alleged victim. *Id*. Although a warrant was issued in 1994 for the defendant's arrest, he did not learn of the indictment or warrant for almost twelve years. *Id.* In February 2006, the defendant eventually learned of the warrant and immediately turned himself in to authorities. *Id.* In August 2006, over fourteen years after the date of the offense, the defendant—who was by this time thirty-two years old—was tried and convicted of the charged offense. *Id.* After his trial, the defendant obtained appellate counsel who

41

timely filed a motion in arrest of judgment and motion to dismiss the indictment, raising a violation of the defendant's federal constitutional speedy trial rights. *Id.*

In concluding that the defendant's ability to present a defense was impaired, the court first noted that such a time lapse made it difficult for the defendant to remember key facts about the day of the incident or identify potential witnesses that could exonerate him from the charges. *Id.* at 570. The court explained that the time lapse in the case deprived the defendant of the ability to effectively cross-examine the State's witnesses because "any word uttered or any fact or detail provided by the State's witness was simply unimpeachable." *Id.* According to the court, "the passage of time rendered the credibility of the State's witnesses concrete, exempt from the testing fire of a cross-examination planned after detailed witness interviews and extensive defense investigation." *Id.* And although the defendant could not point to any specific affirmative evidence of particularized prejudice, the court concluded that the extreme and excessive length of the delay in the case presumptively compromised the reliability of the defendant's trial in ways that neither party could prove or even identify, and furthermore, that this presumption of prejudice intensified and grew with each passing year of delay. *Orand*, 254 S.W.3d at 570 (citing *Doggett*, 505 U.S. at 655).

Similarly, in *Deluna,* the Dallas Court of Appeals held in an unpublished opinion that the eight-year delay between the defendant's indictment and arrest on a charge of indecency with a child significantly impaired his ability to present a defense. *Deluna v. State*, 05-10-01339-CR, 2012 WL 3642308 (Tex. App.—Dallas Aug. 27, 2012, pet. ref'd). In *Deluna*, the State relied entirely on the testimony of the child and her mother to prove its allegations. *Id.* The court stated the eight-year time gap between the defendant's indictment and arrest undermined the defendant's ability to present a defense because he was unable to effectively cross-examine eight-year old memories and eight-year old details. *Id.* The court concluded that the "he said, she said" nature of the evidence rendered cross-examination of the witnesses essential to the defendant's defense, and that therefore the extreme delay caused the defendant to suffer prejudice. *Id.*

Like in both *Deluna and Orand,* the Defendant's case presents a he-said, she-said situation; whereas, the State's evidence consists entirely of the testimony of the complainant and his mother to prove the allegations in the indictment. The Defendant recognizes that this evidence is generally sufficient to support a conviction for the alleged crime. Nevertheless, such testimony is entirely dependent on the memories of the witnesses. The Defendant's defense is likewise dependent on his being able to effectively cross-examine the witnesses with respect to their memories and details

from over ten years ago. As Texas courts have recognized, the significant delay of over 120 months between Defendant's indictment and arrest in this case (more than 6 times the threshold to trigger a *Barker* analysis) will make it virtually impossible for the Defendant to conduct effective cross-examination and present a competent, reliable, and fair defense on his own behalf.

### E. Balancing Test

Weighing all the *Barker* factors together, the court must dismiss the charges against the Defendant. The over ten year delay between indictment and arrest is over six times beyond the threshold of a presumptively prejudicial delay and therefore should be weighted heavily against the State. The State's negligence in arresting the Defendant and bringing him to trial, while not a deliberate delay meant to prejudice the defendant, should also be weighted against the State. The Defendant should not be taxed for not asserting his speedy trial rights prior to this motion because he did not know of his arrest until now. In fact, this factor should also be weighted in his favor, or at least weighted evenly, because the Defendant is now timely asserting his speedy trial rights, immediately upon learning of the charges against him. Finally, the state cannot present sufficient evidence to rebut the presumption of prejudice caused by the delay in this case. Moreover, even if the state does present some evidence to rebut the presumption of prejudice, the nature of the charges, the state's testimonial

evidence, and the significant length of the delay amount to prejudice the Defendant by impairing his ability to present a defense to the charges. Therefore this Court must dismiss the charges against the Defendant with prejudice.

### F. Sixth Amendment Prejudice

The "prejudice" prong of *Strickland* requires this Court to determine whether trial counsel's deficient conduct was sufficient to undermine its confidence in the verdict, that is, whether there is a reasonable probability that, but for the objectively deficient conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. at 694; *Kyles v. Whitley*, 514 U.S. 419, 430 (1995). Appellant need not show that he would have been acquitted but for these errors and the prejudice a defendant must show is by less than a preponderance of the evidence: "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome of the trial." *Strickland v. Washington*, 466 U.S. at 693. *See also Williams v. Taylor*, 529 U.S. 362, 405 (2000)(O'Connor, J., *concurring*). This Court's focus is on the fairness of the trial. *Kimmleman v. Morrison*, 477 U.S. 365, 380 (1986)("We have never intimated that the right to counsel is conditioned upon actual innocence.").

While the prejudice prong of *Strickland* can be satisfied on the basis of a single error, see *Ramirez v. State*, 65 S.W.3d 156, 158 (Tex. App.– Amarillo, 2001) (failure

to object to State's reference to accused as "drunk Mexican"); *Green v. State*, 899 S.W.2d 245, 248 (Tex. App.--San Antonio, 1995) (failure to request jury charge on defensive theory of mistake of fact), a multiplicity of errors on trial counsel's part is much more likely to undermine this Court's confidence in the outcome of this proceeding. *See Greene v. State*, 928 S.W.2d at 126 ("[A]lthough each mistake standing alone is not ineffective assistance of counsel, when all of the mistakes are taken together this court's confidence in the result is undermined."); *Brown v. State*, 974 S.W.2d 289, 294 (Tex. App. San Antonio 1998, pet. ref'd) (multiplicity of counsel's deficient conduct "undermines this court's confidence in the conviction").

This case presents in compelling terms "a breakdown in the adversarial process that our system counts on to produce just results." *Strickland v. Washington*, 466 U.S. at 696.

The trial court found that the Supreme Court's decision in *Doggett* was as a matter of law distinguishable from Appellant's case. And, more importantly, that trial counsel provided effective assistance even though he did not investigate the law necessary to present a speedy trial claim nor did he have a single note in his file pertaining to any investigation of any facts necessary to present a speedy trial claim. In fact, the trial court found that trial counsel was unaware of any fact to support to the speedy trial claim as presented at the motion for new trial hearing. Trial counsel

did not investigate the factual basis for the claim because he did not know or understand the significance of the facts necessary to present the legal claim. A lawyer's knowledge of the law is necessary to understand what facts are needed to be discovered to support the claim. The record in this case supports Appellant's claim of ineffective assistance of counsel and requires this Court to grant Appellant a new trial.

Wherefore premises considered, Appellant prays that this Court reversed the trial court and grant Appellant a new trial.

**Prayer**

WHEREFORE PREMISES CONSIDERED, Appellant prays that this Court reverse his conviction and remand the cause to the trial court for a new trial.

Respectfully Submitted,

SCHNEIDER & McKINNEY, P.C.

/s/ Stanley G. Schneider
Stanley G. Schneider
T.B.C. No. 17790500
440 Louisiana St.
Suite 800
Houston, Texas 77002
Tel:   (713) 951-9994
Fax:   (713) 224-6008
Email: stans3112@aol.com

ATTORNEY FOR APPELLANT

## Certificate of Service

This is to certify that a true and correct copy of the attached and foregoing document has been served on the Harris County District Attorney's Office by emailing, mailing and/or hand delivering a copy to the District Attorney's office at 1201 Franklin, Suite 600; Houston, Texas 77002, on this 24th day of July, 2015.

/s/ Stanley G. Schneider  
Stanley G. Schneider


## Certificate of Compliance

I certify that this document was prepared with Word Perfect X3, and that, according to that program's word-count function, the sections covered by TEX. R. APP. P. 9.4(i)(1) contain 11,676 words.

/s/ Stanley G. Schneider  
Stanley G. Schneider